ANN HAVILAND, Respondent, *v.* DAVID P. HALSTEAD, Appellant.

An action for the breach of a contract of marriage, between parties in this State, cannot be maintained where one of the parties was, by law, incapable of entering into the marriage relation at the time of making the contract.

Where a divorce has been granted on the ground of the adultery of the husband, he cannot, in this State, make a valid contract of marriage during the lifetime of his wife who obtained the divorce.

*E. Wells,* for the appellant.

*J. H. Reynolds,* for the respondent.

DAVIES, Ch. J.   The action is brought to recover damages for a breach of promise of marriage. The complaint avers such promise to have been made by defendant, and its breach by marrying another person.

The defendant had been previously married, and had been divorced from his wife on the ground of his adultery, and the decree of divorce contained a prohibition against his marrying again.   The contract of marriage was made in this State, although it appeared that, after it was made, the parties agreed to be married in the State of New Jersey.   The defendant moved the court to nonsuit the plaintiff, on the ground that the contract was void by the laws of this State; which motion was denied, and the jury, under the charge of the judge, found a verdict for plaintiff, and judgment thereon was affirmed at General Term.

The opinion of the learned judge of the Supreme Court at General Term, holding that this action cannot be maintained, being the only one delivered in that court, so ably and fully discusses the questions presented on this appeal, and arrives at a conclusion so satisfactory, that but little, if anything, remains to be said.

The plaintiff avers, in her declaration, that the defendant promised to marry her on request, and a readiness and willingness on her part to do so, and a breach of the contract on his part by marrying another person.   It appeared, upon

the trial, that both parties were residents and domiciled in this State, and that this contract of marriage was made in this State, and that the plaintiff knew at the time that the defendant had a wife living of a former marriage; that he had been divorced from such former wife, and she knew the cause for such divorce. The Revised Statutes of this State declare that no second or other subsequent marriage shall be contracted by any person during the lifetime of any former husband or wife of such person, unless, 1. The marriage with such former husband or wife shall be annulled or dissolved for some cause other than the adultery of such person; or, 2. Unless such former husband or wife shall have been finally sentenced to imprisonment for life.

"Every marriage contract in violation of the provisions of this section shall, except in the case provided for in the next section, be absolutely void." (2 R. S., 5th ed., § 4, p. 227.) The exception in the next section referred to is unimportant here to be considered.

This court, in *Crapsey* v. *Ogden* (1 Kern., 228), had occasion to consider the validity of a contract of marriage made under similar circumstances to that for the breach of which this plaintiff seeks to recover damages, and held it to be invalid. Judge JOHNSON, in the opinion of the court, says: "The prohibition, then, relates to the case of either party to a marriage whenever and wherever contracted, both the parties to which are living, and prohibits either party to contract a second or other subsequent marriage during the lifetime of the other, except in certain cases specified." He also observed that the party divorced, in that case, on the ground of his adultery, was incapable, by the provisions of the Revised Laws, from marrying again; and that those laws prescribed no limit to his incapacity during the life of his former wife, and that the provisions of the Revised Statutes above quoted continue the same incapacity and impose it upon all others against whom divorces are granted on the ground of their adultery. "There has been no moment of time since he was divorced when marriage was lawful to him in this State, nor has the policy of the law, as evinced in the statutes, at any moment since his

divorce, been changed." The question is not here, whether a marriage contracted in another State, and solemnized there between these parties, would be a legal and valid marriage here, but whether, in effect, this plaintiff, a party to an illegal and void contract by the laws of this State, can, in effect, enforce it here. Can the aid of the courts of this State be invoked to award her damages for the breach of a contract more honored in its breach than it would be in its observance? Clearly not; neither can the contract be validated on the ground that it was to be performed in another State. The contract set out in the complaint contained no such element, nor did that sworn to on the trial by the plaintiff herself show that it was made to be performed in another State, and she is the only witness who furnishes any testimony on this point. She says: "When the engagement was made, nothing was said about the place of marriage. The first suggestion about going to New Jersey to be married was after the engagement; can't tell how long; perhaps four or six weeks after. We were to be married in Jersey City. I had no friends or acquaintances there. I was going there at his proposal, and start from there traveling. He said he was not to be married in New York State." We cannot close our eyes to the fact that the idea of the marriage being celebrated in New Jersey was an afterthought, but the contract of marriage, for the breach of which this action was brought, contained no stipulation as to the place of its performance. Even if it should be conceded that, if the parties had proceeded to the State of New Jersey and there been married, that such marriage would have been lawful and binding, yet, as already observed, it is quite another question whether an action can be maintained in the courts of this State for damages upon a breach of a contract made here, and in contemplation of the parties, at the time it was made, to be performed here, and which, by the laws of this State, is prohibited and declared to be void. I think clearly not, and that the plaintiff should have been nonsuited upon the trial.

Judgment should be reversed and a new trial ordered, costs to abide the event.

SMITH, J. It appears in evidence that the defendant was married to a former wife, in this State, in the year 1831; that, by a decree of the Court of Chancery, the marriage between them was dissolved in 1846, on the ground of his adultery, and he was prohibited by the decree from marrying again during the lifetime of his former wife; and that such former wife was living when this cause was tried. At the time, therefore, when the defendant made the promise to marry the plaintiff, for the breach of which this action is brought, he was prohibited by a statute of this State from marrying again until the death of his former wife (2 R. S., 146, § 49); and if he had performed his contract by marrying the plaintiff within this State, such marriage would have been absolutely void (id., 139, § 5), and the defendant would have been guilty of a misdemeanor. (Id., 696, § 39.) It is obvious, then, that if the promise of the defendant had been to marry the plaintiff within this State, or had been a general promise of marriage, without any limitation as to the place of performance, it would have been illegal and void.

But the plaintiff was permitted to recover in the court below, on the ground that she was induced by the defendant to believe that a marriage between them, had in the State of New Jersey, would be lawful, and that a contract of marriage was made between them, to take place in that State. Unless this ground is tenable, the judgment must be reversed.

The contract set out in the complaint was a general promise to marry the plaintiff on request, and such was the original contract in fact made by the parties, as testified to by the plaintiff. She stated that when the engagement was entered into, nothing was said about the place of marriage, but that, four or six weeks afterward, it was suggested that the marriage take place in New Jersey, and it was so agreed. At the time of making the contract, the parties resided in the county of Westchester, in this State, and it is apparent from the testimony that, notwithstanding the arrangement that the marriage ceremony should be performed in New Jersey, they intended to retain their residence in New York.

It may be assumed, that if a marriage had taken place

between the parties in New Jersey, in pursuance of their contract, such marriage would have been recognized and treated as valid by the courts of this State, even although the parties had gone into New Jersey with intent to evade the laws of this State. (Story on Conflict of Laws, §§ 89, 123; *Putnam* v. *Putnam*, 8 Pick., 433; *West Cambridge* v. *Lexington*, 1 id., 506.) But it does not follow that our courts will enforce an unconsummated contract of that description, or give damages for its breach.

The doctrine that a marriage is to be held valid or otherwise, according to the laws of the place where it is contracted, although the parties went to the foreign country with an intention to evade the laws of their own, is an exception to the general principle of law relating to contracts, that a fraudulent evasion of the laws of the country where the parties have their domicile, will not be upheld. The exception in favor of marriages so contracted is founded on principles of policy, to prevent the great inconvenience and cruelty of bastardizing the issue of such marriages, and to avoid the public mischief which would result from the loose state in which people so situated would live. (*Medway* v. *Needham*, 16 Mass., 157, per PARKER, Ch. J.)

No such considerations of public policy arise in the case of an unconsummated promise of marriage. If made by a person who is within the prohibition of our statute, it is simply an unlawful contract, which the courts of this State will not enforce, and for the breach of which they will not award damages. It is wholly immaterial whether or not such contract is to be performed in a foreign State. The law recognizes no duty on the part of an inhabitant of this State to go beyond its limits for the purpose of evading its laws by performing an act which they expressly prohibit and declare a penal offense.

If the plaintiff was induced to believe that a marriage in New Jersey would be lawful, she was simply led to rely upon the assurance that the law is as we have assumed it to be. She was not told that an unconsummated contract of marriage between the parties, to take place in New

Jersey, would be valid and capable of being enforced in the courts of this State, nor was she deceived by any misrepresentations or concealment of facts. She must be presumed to have known that the promise of the defendant was void until consummated, and that if he failed to perform it, the law would not give her a remedy.

I regret to be forced to the conclusion that the plaintiff cannot recover in this case, for, upon the facts found by the verdict, the defendant's conduct toward her deserves more than censure; but I fail to discover any principle of law which will sustain the judgment.

Judgment should be reversed.