## DAVIS v. PRYOR.

(Circuit Court of Appeals, Eighth Circuit.  November 25, 1901.)

No. 1,522.

1. MARRIAGE—WHAT CONSTITUTES AT COMMON LAW—CONTRACT AND COHABITATION.

A contract between a man and woman to become husband and wife, made in good faith and followed by a consistent and notorious matrimonial cohabitation, constitutes a valid common-law marriage, unless interdicted by some express statute, and confers upon the parties all the rights, and subjects them to all the duties and obligations, incident to the marriage relation.

2. SAME—VALIDITY OF MARRIAGE PROMISE—KNOWLEDGE THAT PROMISOR WAS MARRIED.

A mutual promise of marriage between two persons, one of whom is known by both to be married, is void; and, where the woman has knowl-

edge that the man has for many years lived and cohabited with another woman in the relation of husband and wife, she is chargeable with notice that he is married, and cannot maintain an action for breach of the contract on the ground that he represented himself to be unmarried.

3. EQUITABLE ESTOPPEL—FALSE REPRESENTATIONS.
False representations, to work an estoppel, must also be of a nature to lead a reasonably prudent person to the action taken, and must have been acted on in good faith and in ignorance of the truth.

4. MARRIAGE—ACTIONS FOR BREACH OF PROMISE—QUESTIONS FOR JURY.
Where the uncontradicted evidence in an action for breach of promise of marriage shows that defendant was, as a matter of law, a married man when the alleged contract was made, the court should take the responsibility of declaring such conclusion, and not submit the question to the jury.

In Error to the United States Court of Appeals in the Indian Territory.

The defendant in error, who was plaintiff below, instituted her action in the United States court for the Northern district in the Indian Territory against the plaintiff in error, for a breach of a contract of marriage alleged to have been entered into between her and the defendant in December, 1896. With a view of aggravating the damages, she also alleged subsequent seduction by him. Defendant denied the alleged contract and seduction. The evidence disclosed that plaintiff, a young woman of about 21 years of age, and defendant, a man of about 48 years of age, had been for many years residents of the Cherokee Nation in the Indian Territory; that defendant had been living with a woman called in the record Cinda, in the apparent relation of husband and wife for many years, certainly from and after 1881, and up to the time involved in this inquiry. During all this time, defendant and Cinda had lived together as husband and wife, had continuously held themselves out to the public as such, and were universally so known and recognized in the community in which they lived. Soon after 1881 a child was born to them. Plaintiff had worked for defendant and Cinda as a household servant in their family for several months during the years 1895 and 1896, and was fully cognizant of the apparent marital relation existing between them. She addressed Cinda as Mrs. Davis, recognized her authority in the household, and testifies unreservedly that she and everybody received her and treated her as the wife of Mr. Davis. Defendant, Davis, testifies that he and Cinda, in May, 1881, agreed to live together and treat each other as husband and wife. This is not disputed. On the contrary, the immediate entry upon life as husband and wife, the continued matrimonial cohabitation, holding themselves out, and recognition by everybody as such, for a period of 15 years or more, abundantly confirms the truth of the statement that they had agreed to live together and treat each other as husband and wife. The foregoing are undisputed facts appearing in the record of this case. There is evidence on both sides on the issue as to whether there was a promise of marriage made by defendant and accepted by plaintiff. Plaintiff testified that there was such a contract, and defendant testified that there was no such contract; that the only agreement made between them was that they would elope for lustful purposes. There is evidence tending to show that defendant told

plaintiff, for the purpose of securing her consent to the marriage, and in answer to plaintiff's objection to the effect that he was already a married man, that he had never been lawfully married to Cinda. There was evidence on this issue directly to the contrary. On testimony of the foregoing character, the case was submitted to the jury, and resulted in a verdict in favor of plaintiff for $9,500. An appeal was prosecuted to the United States court of appeals in the Indian Territory, where, in due course, the judgment of the trial court was affirmed. Afterwards a writ of error was sued out, bringing the case here for final review.

Napoleon B. Maxey (Benjamin Martin, on the brief), for plaintiff in error.

Nathan A. Gibson (William F. Seaver, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

ADAMS, District Judge, after stating the case as above, delivered the opinion of the court.

There are many assignments of error, one of which is that the trial court erred in not directing a verdict in favor of the defendant. A consideration of this assignment is all that is necessary for a disposition of this case.

After a patient reading and consideration of all the evidence in the record, which has been summarized in the foregoing statement, we have no doubt that defendant, Davis, was in contemplation of law a married man at the time the alleged contract of marriage with plaintiff was made. Marriage is a civil contract, and may be made by any persons of different sexes competent to make contracts. While commonly entered into with some ceremony, either civil or religious, it may be consummated without any ceremony. If a man and woman in good faith agree to become husband and wife, and this agreement is followed by a consistent and notorious matrimonial cohabitation, the relation of husband and wife is lawfully established. In the absence of direct proof of the agreement, it is well settled that facts showing "that parties have publicly acknowledged each other as husband and wife; have assumed the marriage rights, duties, and obligations; have been generally reputed in the place of their residence to be husband and wife,—are relevant to prove a contract of marriage between them." Arnold v. Chesebrough, 7 C. C. A. 508, 58 Fed. 833; Com. v. Stump, 53 Pa. 132, 91 Am. Dec. 198; Rose v. Clark, 8 Paige, 574. Such a contract, unless interdicted by some express statutes of the state in which it is made, constitutes a valid common-law marriage, and confers upon the parties to it all the rights, and subjects them to all the duties and obligations, incident to the marriage relation. Meister v. Moore, 96 U. S. 76, 24 L. Ed. 826. Accordingly, the undisputed facts of the case now under consideration show that the defendant, Davis, at the time it is claimed he promised to marry the plaintiff, was a married man. It also clearly appears from the evidence that plaintiff knew he was a married man at the

time she claims to have procured his promise to marry her. Her own evidence is conclusive of this fact. She had lived in his family as a domestic at different times within the two years next preceding the alleged contract. She says the defendant and Cinda treated each other in every way as husband and wife, and that she and everybody else recognized them as such, and that they had so done for many years. She admits, therefore, that she had all the evidence that defendant was a married man which any domestic, or the community in general, ordinarily has that 99 persons out of 100, living apparently in the relation of husband and wife, are in fact such.

We fully recognize the just and well-settled rule of law by which a man, even though married, and for that reason incapacitated from executing a contract or promise of marriage to another, shall not escape liability for damages occasioned to a third party, if, in point of fact, she entered into the contract with him in ignorance of the fact that he had a living wife. Kelley v. Riley, 106 Mass. 339, 8 Am. Rep. 336; Bish. Mar., Div. & Sep. § 192. She must not only be ignorant of the fact that he is a married man, but she ought to have good reasons to believe that he is single. She certainly cannot rashly and without reason and contrary to all the suggestions of her own senses, and contrary to notorious and universal reputation, close her eyes and declare she does not know, and thereby entitle herself to maintain an action. It is equally well settled that "a mutual promise of marriage between two persons, one of whom is known by both to be married, is simply void. A breach of such a contract by either is no actionable wrong to the other." Bish. Mar., Div. & Sep. § 202; Paddock v. Robinson, 63 Ill. 99, 14 Am. Rep. 112; Haviland v. Halstead, 34 N. Y. 643. The evidence was so conclusive on one of the questions of fact just considered that the trial court correctly instructed the jury that on the undisputed evidence the defendant was a married man at the time plaintiff claims he promised to marry her. The court of appeals in the Indian Territory disapproved of that instruction, holding that the issue should have been submitted to the determination of the jury under proper instructions. In so holding, we are of opinion that the latter court was wrong. When the facts are uncontradicted and in connection with all fair and reasonable inferences lead to a certain inevitable conclusion, the court should take the responsibility of declaring such conclusion, and not subject the parties to the possibility of a result brought about by caprice, prejudice, or sympathy on the part of a jury. For like reasons, we are of opinion that the trial court should have gone further and told the jury that, on the evidence of the plaintiff herself, she must be held to have had full knowledge of the fact that plaintiff was a married man. Her categorical denial of such knowledge, in the light of her own admitted observation, experience, and information, was entitled to no consideration. She confessed to knowing all the facts constituting in law the relation of husband and wife, and her denial of knowledge of the legal effect of such facts cannot avail her. She might as well have admitted she saw them married by a magistrate or clergyman, and denied knowledge of the legal effect of such ceremony. The case is, therefore, reduced to this: that, at the time

of the alleged contract of marriage between plaintiff and defendant, defendant was a married man and plaintiff knew it. The contract, if made, was void, and its breach created no cause of action in favor of either party to it. But it is urged that defendant is estopped from denying that he was a single man, that his representations to plaintiff to the effect that his relations with Cinda were meretricious, and that he had never been lawfully married to her, were such as induced her to believe that she could lawfully marry him, and that she relied upon such representations and acted accordingly. Whether it is intended by this line of argument to invoke the principles governing estoppel in pais or those governing actions at law for fraud and deceit is not entirely clear to us, but the inapplicability of either to the facts of this case is quite apparent. Conceding, for a moment, that we may administer equitable relief in this action at law, or that we may convert an action on the contract into one on the case for fraud and deceit, it is sufficient to remark that equitable estoppel never arises in favor of a party to whom false representations are made, unless that party is ignorant of the truth of the matter, and acts in good faith upon the representations, to his detriment. Bigelow, Estop. (5th Ed.) 570; Blodgett v. Perry, 97 Mo. 263, 10 S. W. 891, 10 Am. St. Rep. 307, and cases cited. False representations, in order to work an estoppel, must also be of a nature to lead a reasonably prudent person to the action taken. Bigelow, Estop., supra, pages 572 and 578, and cases cited. Tried by the foregoing tests, the conclusion is inevitable that plaintiff was not ignorant of defendant's true relation to Cinda, and, even if she was, she ought not to have been. Any ordinarily prudent person could not have been. There is such a close similarity between the elements of estoppel in pais and of an action for fraud and deceit that the foregoing observations made with relation to the former are equally applicable to the latter. It requires no more than the bare statement—certainly no citation of authority—to show that no action for deceit could have been successfully maintained by the plaintiff in this case. She knew too much. The alleged misrepresentation was about matters and things with which she was entirely familiar and about which she could not be misled. She knew all the facts, and must, under well-recognized principles of law, be held to a knowledge of their legal import.

The defendant's conduct, as shown by the record in this case, was extremely vulgar and obscene, and can neither be justified nor palliated by us; but this fact alone does not entitle plaintiff to recover damages in this action. She herself, at best, recklessly entered into a supposed contract with defendant with full knowledge of all facts which avoided it ab initio. Her general character and conduct, as disclosed by the record, and especially her blind indifference to the happiness and welfare of defendant's wife, well known by her to have been a faithful spouse to him for many years, does not commend her case to any other than the closest scrutiny with respect to her exact legal rights. This she has received, and the conclusion is that, under all the facts of the case, she cannot maintain any action for the breach of the supposed marriage contract. If made, it was "more honored in the breach than the observance."

The trial court, in our opinion, erred in not directing a verdict in favor of the defendant, and the court of appeals in the Indian Territory also erred in affirming the judgment of the trial court.

The judgment of both courts is accordingly reversed, and the cause remanded to the United States court for the Northern district in the Indian Territory, with instructions to grant a new trial.