## WARREN v. CANARD.

No. 1329.  Opinion Filed December 12, 1911.

(120 Pac. 599.)

1.  **MARRIAGE—Common-Law Marriage—Evidence—Reputation.** On the trial of an issue involving the existence of a common-law marriage, cohabitation is important evidence tending to show the marriage; and, as it is impossible for chaste people to cohabit without the protection of the marriage relation, it is error for the court to exclude evidence tending to show that during the time of this cohabitation the woman was a common prostitute, as such evidence would greatly weaken the probative force of the cohabitation.

2.  **SAME—Common-Law Marriage—Evidence.** In trying such an issue, however, evidence tending to show that the woman was generally reputed to be a prostitute was properly excluded, as it is common knowledge that such a reputation, once established, might easily follow the woman far beyond the time of her reform.

3.  **SAME—Common-Law Marriage—Evidence.** On the trial of this issue, it was not error to admit in evidence a certified copy of the application for enrollment of the child of the marriage, as filed with the Commission to the Five Civilized Tribes.

(Syllabus by Ames, C.)

*Error from District Court, Hughes County; John Caruthers, Judge.*

Action by Frank L. Warren, plaintiff below, plaintiff in error, against Felix P. Canard, defendant below, defendant in error, to quiet title to certain real estate.  Judgment for defendant, establishing title to the land, and plaintiff brings error.  Reversed and remanded.

*Warren & Miller,* for plaintiff in error.

*N. A. Gibson, H. C. Thurman,* and *James A. Long,* for defendant in error.

Opinion by AMES, C.  Frank L. Warren, the plaintiff in error, as plaintiff, filed his petition in the district court of Hughes county against Felix P. Canard, defendant, alleging that he was

the owner and in possession of certain real estate, and that the defendant claimed an interest therein, and praying that he have judgment quieting title. The defendant answered, admitting that the plaintiff was in possession of the real estate, but denying that he was the owner of it, and setting up title in himself. He alleged .that he was a full-blooded Creek Indian; that in 1899 he married Nancy Leader, a full-blooded Creek; that they had one child, named Stephen; that allotments were made, both to Nancy and Stephen; that Nancy died in 1903; that Stephen died in 1908; and that the defendant, by reason of these facts, inherited both of the allotments. The plaintiff replied with a general denial and a particular denial that the defendant ever married Nancy Leader, or that he was the father of Stephen Canard, and further pleaded that Stephen Canard was the illegitimate son of Nancy Leader; that when Nancy died Stephen inherited the lands allotted to her, and that when Stephen died both allotments descended to the brothers and sister of Nancy Leader, who were the maternal uncles and aunt of Stephen Canard; and that these heirs had all conveyed to the plaintiff. The question involved is the marriage of the defendant and Nancy Leader; there being no issue raised concerning the law of descent and distribution. The case was tried to the court, without the intervention of a jury. The court found that the defendant was lawfully married to Nancy Leader, as alleged by him, and that there was born to the union one child, Stephen; that Nancy died in February, 1903; that Stephen died in September, 1908; that the land in controversy at the death of Stephen descended to the defendant as father; and that the grantors of the plaintiff, therefore, had no right to convey the same.

The testimony tends to show that in 1899 the defendant and Nancy, both full-blooded Indians, were living in Holdenville, where the defendant was clerking; that he and Nancy agreed to live together as man and wife; that no marriage ceremony was ever performed; that they did live together in Holdenville for about eight months, boarding at the house of a friend; that Nancy then went to her father's house, near Calvin, and in the course

of three or four months gave birth to this son, Stephen, who was known as Stephen Canard; that the defendant was not present at the birth of the child; that Nancy's health after the birth of the child was poor, and until her death in 1903 she lived with her father, or other members of her family; that she and the defendant never lived together after this time, although he went to Muskogee with her once, and possibly visited her at other times; that he contributed something to her support and to the support of the child, possibly as much as $50 in cash and something in the way of clothes; that an allotment was selected for Stephen adjoining the defendant's and on which the defendant had improvements; that Nancy's allotment was selected in some other place; that in taking the allotment Stephen was described as the child of Nancy and the defendant, and the record of the Dawes Commission was admitted in evidence, showing this fact; that after Nancy's death Stephen continued to live with his mother's relatives until his death in 1908; that the defendant was not present at the death or burial of either Nancy or Stephen. Several of Nancy's relatives, including some of those with whom she lived, testified that they had never heard of her being married to the defendant; while the woman with whom they lived in Holdenville during the first eight months after their alleged marriage testified that they told her they were married.

The errors complained of are that the court erred in the admission of evidence and in rendering judgment for the defendant, instead of the plaintiff. It is not necessary to examine in detail all of the evidence objected to. The material question is whether it was error to reject the evidence offered by plaintiff tending to show that Nancy Leader, at the time of the alleged common-law marriage, and prior to that time and subsequent to that time, was a prostitute, and was generally regarded as a prostitute. It is not contended by either party that a common-law marriage in the Indian Territory would not be recognized. *Davis v. Pryor,* 112 Fed. 274, 50 C. C. A. 579; *Porter v. United States,* 7 Ind. T. 616, 104 S. W. 855. A common-law marriage exists where the parties have agreed with each other to be husband and wife, and,

pursuant to this agreement, have entered into the marriage rela-
tion. In proving such a marriage, cohabitation is important evi-
dence, and it is impossible to conceive of chaste people cohabiting
without the protection of the marriage relation. If either party,
therefore, during the time, had illicit relations with another, man-
ifestly the presumption of marriage arising from the cohabitation
with the other party is much weakened. Jones on Evidence (2d
Ed.) par. 89. Proof, therefore, that the woman, during the time
of the cohabitation with the man, was a common prostitute would
necessarily greatly weaken the probative force of the cohabita-
tion; and we therefore think it was error to exclude this evidence.

A different question is presented, however, when we come to
consider the evidence tending to show that the woman was gen-
erally reputed to be a prostitute. Marriage is the most sacred
human relation, and the law wisely protects it. If a woman has
fallen, and is seeking to retrace her steps, her past should be blot-
ted out, as far as the law can succeed in doing so; and therefore
we do not think evidence concerning her reputation should be ad-
mitted. It is, of course, common knowledge that a woman's repu-
tation, once lost, is difficult to regain, and such a reputation might
easily follow a woman far beyond the time of her reform. There
is therefore a vast difference between proving this woman's repu-
tation and proving the fact that she was a prostitute during the
time of her relations with the defendant.

The court admitted in evidence a certified copy of the appli-
cation for enrollment of Stephen Canard as a citizen of the Creek
Nation, which was filed with the Commission to the Five Civil-
ized Tribes. These rolls of citizenship and of freedmen are made
conclusive evidence of the *quantum* of Indian blood and of age
(Act May 27, 1908, c. 199, sec. 3, 35 Statutes at Large, 313), and
therefore are not admissible, by virtue of the act of Congress,
for other purposes. In proving a common-law marriage, how-
ever, the evidence may properly take a very wide range, as any
competent evidence tending to establish the relation of husband
and wife is admitted. In *Reaves v. Reaves,* 15 Okla. 240, 242,
249, at page 256, 82 Pac. 490, at page 495 (2 L. R. A. [N. S.]

353), emphasis was placed upon the fact that the parties joined as husband and wife in the execution of mortgages of real estate, and that the woman acknowledged the instruments as the wife, and in the same case is a quotation from *Maryland v. Baldwin,* 112 U. S. 494, 5 Sup. Ct. 278, 28 L. Ed. 822, in which similar acts are referred to as persuasive. We therefore think that these official records were admissible, not as conclusive, but as evidence tending to show that the parties were acting as husband and wife. The original record being competent evidence for the purpose stated, a duly certified copy was likewise competent. Comp. Laws 1909, sec. 5892.

We therefore are of the opinion that the case should be reversed, and remanded for a new trial.

By the Court: It is so ordered.

All the Justices concur.