## JOHNSON *et al.* v. PERRY *et al.*

No. 5241. Opinion Filed November 23, 1915.

Rehearing Denied December 14, 1915.

(153 Pac. 289.).

1. **INDIANS—Marriage—Evidence.** Upon the question of marriage or nonmarriage, it was not error to admit in evidence a certified copy of the application for enrollment of an alleged child of the marriage, including the affidavit of the mother filed with the Commission to the Five Civilized Tribes.

2. **APPEAL AND ERROR—Decision on Appeal—Equity.** In a case of purely equitable cognizance, where it appears that the trial court may have failed to consider competent evidence introduced on behalf of one of the parties, this court has power to consider the entire record, weigh the evidence, affirm the judgment, or render such judgment here as should have been rendered by the trial court.

(Syllabus by Bleakmore, C.)

*Error from District Court, Pontotoc County;*
*Tom D. McKeown, Judge.*

Action by Jacob Perry and another, by K. C. Parks, guardian, against Hunis Johnson and another. Judgment for plaintiffs, and defendants bring error. Affirmed.

*Robert Wimbish* and *W. C. Duncan,* for plaintiffs in error.

*C. G. Moore, E. P. Lieuallen,* and *W. F. Schulte,* for defendants in error.

Opinion by BLEAKMORE, C. This is an action to quiet title, commenced in the district court of Pontotoc county on May 31, 1912, by the defendants in error. The parties will be referred to as they appeared below.

In the petition it is alleged that the plaintiffs, Jacob Perry and Johny Brown, are the owners of a certain tract of land inherited by them from their sister, Elsie Johnson, an allottee of the Chickasaw Tribe of Indians, who died in 1912; that about the 25th day of April, 1912, the defendant Hunis Johnson, without right, executed a warranty deed, purporting to convey said land to the defendant Pegg, which deed is recorded and constitutes a cloud on plaintiffs' title. Defendants answered, alleging that the defendant Hunis Johnson, a full-blood Chickasaw Indian, was the father of Elsie Johnson, and inherited the lands involved to the exclusion of the plaintiffs, and had conveyed same to the defendant Pegg by deed duly approved by the proper county court. It is further alleged, by way of cross-petition, that plaintiffs are in possession and are collecting the rents and revenues arising from said land, of the reasonable value of $400; that their claim and assertion of title thereto is a cloud upon the title of defendant Pegg, etc., and there is prayer for the rental value of said premises and for the quieting of title in defendant Pegg. Plaintiffs replied, denying that defendant Hunis Johnson was the father of Elsie Johnson, and alleging that he was never lawfully married to the mother of Elsie Johnson according to the laws of the Chickasaw Nation. It appears from the evidence that Susan Dyer, a full-blood Chickasaw

Indian woman, was the mother of three children, Elsie Johnson, Jacob Perry, and Johny Brown, the latter two of whom, the plaintiffs herein, are conceded to be illegitimate.

The land in controversy was allotted to Elsie Johnson, who was born in 1900 and died in April, 1912, some time after the death of her mother. Defendants in their brief say:

"Defendant Hunis Johnson claimed to be the common-law husband of Susan Dyer and the father of Elsie Johnson, deceased, and as such was her only heir. He conveyed the land to his codefendant, Wm. M. Pegg."

Thus it will be seen that the rights of defendants are dependent upon the fact of such marriage.

There was some testimony tending to show that Hunis Johnson and Susan Dyer lived together and were regarded as husband and wife. In this regard the defendant Hunis Johnson testified:

"I am one of the defendants in this case. I have sold the land in this suit to Mr. Pegg. I knew Susan Dyer in 1898. I lived with her. Began living with her in 1898. Q. Tell the court what agreement or understanding you had as to whether or not you should be man and wife when you were living together. A. He says, I went home with her, and then from that time I came back and forth from my father's house, and afterwards she asked me to marry her, which we never did do, and then I finally told my mother I was going to bring her home, and I do so. Q. State whether or not you and she told any one you were married, and that you were man and wife? A. Yes, sir. Q. Who did you tell? A. I told Thomas and Mason Johnson. Q. Who else? A. Cornelius Nelson. Q. Where were you when you had this agreement? * * * A. We

were between Steedman and Fannie Dyer's house. Q. While you were picking cotton, what did you agree to do? A. We agreed to live together. * * * Q. Where did you go from there? A. We went to Fannie Dyer's house. Q. Fannie was her mother, wasn't she? A. Yes, sir. Q. How long did you stay there? A. About a year. We went from there to my father's. Q. How long did you stay at your father's? A. Right about a year. Q. Did you know Will Pegg and Dave Gray in his lifetime? A. Yes, sir. Q. And did you trade over there with them at any time while you and that woman were living together? A. Yes, sir. Q. Did Susan buy any stuff over there at that store? A. Yes, sir. Q. Who paid for it? A. I did. Q. When was Elsie born? A. First of October. Q. About what year? A. First of December. Q. What year? A. 1900. Q. Her name was Elsie Johnson, wasn't it? A. Yes, sir. Q. Your name, Hunis Johnson? A. Yes, sir. Q. Whose child was she? A. Dawes Commission wrote it was my child. Q. Don't you know? A. I know they said it was mine."

Copies of the enrollment records of the Commissioner to the Five Civilized Tribes, duly certified, embracing the affidavit of Susan Dyer and the person who attended upon her at the birth of Elsie Johnson, were admitted in evidence upon the question of said marriage as follows:

"BIRTH AFFIDAVIT.

"Department of the Interior, Commission to the Five Civilized Tribes.

"*In re* application for enrollment, as a citizen of the Chickasaw Nation, of Elcie [Elsie] Johnson, born on the 2d day of December, 1900. Name of father: Hunis Johnson, a citizen of the Chickasaw Nation. Name of mother: Susan Dyer, a citizen of the Chickasaw Nation. Post office, Ada, I. T."

"AFFIDAVIT OF MOTHER.

"United States of America, Indian Territory, Southern District. I, Susan Dyer, on oath state that I am 24 years of age and a citizen by blood of the Chickasaw Nation; that I am not the lawful wife of Hunis Johnson, who is a citizen by blood of the Chickasaw Nation; that a female child was born to me on the 2d day of December, 1900; that said child has been named Elcie [Elsie] Johnson, and is now living.

her

"SUSAN X DYER.

mark

"Witnesses to mark (must be two witnesses):

"KATIE STICK.
"W. H. ALLISON.

"Subscribed and sworn to before me this 12th day of August, 1903.

"W. H. ALLISON, *Notary Public.*  [Seal.]"

"AFFIDAVIT OF ATTENDING PHYSICIAN OR MIDWIFE.

"United States of America, Indian Territory, Southern District. I, Sallie Dyer, a midwife, on oath state that I attended on Mrs. Susan Dyer, wife of Hunis Johnson on the 2d day of December, 1900; that there was born to her on said date a female child; that said child is now living and is said to have been named Elcie [Elsie] Johnson.                              her

"SALLIE X DYER.

mark

"Witnesses to mark (must be two witnesses):

"KATIE STICK.
"W. H. ALLISON.

"Subscribed and sworn to before me this 12th day of August, 1903.

"W. H. ALLISON, *Notary Public.*  [Seal.]"

When the parties rested their case, the court sustained a demurrer to the evidence of defendants, and upon motion of plaintiffs rendered judgment in their behalf.

It is contended by the defendants that there was prejudicial error in the admission and consideration of the affidavits as above set forth. The rule that such evidence is competent was established in this jurisdiction in *Warren v. Canard*, 30 Okla. 514, 120 Pac. 599, a case in many respects like the present one, and in which a Creek Indian, claiming to be the father and heir of an allottee, asserted his right to inherit by virtue of a common-law marriage with the mother of such allottee. In that case it was held in the syllabus:

"On the trial of this issue [the marriage] it was not error to admit in evidence a certified copy of the application for enrollment of the child of the marriage, as filed with the Commission to the Five Civilized Tribes."

See, also, Wigmore on Evidence, sec. 1492; Chamberlayne's Modern Law of Evidence, sec. 2974; *Craufurd v. Blackburn,* 17 Md. 56, 77 Am. Dec. 323.

It is further contended that the evidence introduced by defendants reasonably tended to establish the marriage of Hunis Johnson to Susan Dyer, and that by sustaining the demurrer thereto, and setting it out of the case, the court failed to consider any evidence on behalf of defendants, but rendered judgment solely upon the petition and evidence of plaintiffs. It is urged that the action of the court was prejudicial to the rights of defendants, demanding a reversal. It is not necessary to determine in this case whether the common law of England, theretofore put in force in the Indian Territory as

to other persons, was, at the time of the alleged marriage of the defendant Hunis Johnson to Susan Dyer, applicable to or embraced citizens and members of the Chickasaw Tribe of Indians. No evidence was introduced as to the laws or customs of the Chickasaw Tribe with regard to marriage, and the court, in order to administer justice between the parties, properly applied the law of this state, which embraces the common law as to marriages, and determined their rights accordingly. The established rule in this jurisdiction is:

"Where on the trial of an action at law all the issues are submitted to the court without the intervention of a jury, and a demurrer to the evidence is passed upon and sustained, unless it affirmatively appears from the record that the trial court treated the cause as one finally submitted for its determination, and, upon considering and weighing all the evidence, found that the demurrant should prevail, the correctness of the decision sustaining such demurrer must be tested by the general rule that a demurrer admits all the facts which the evidence tends to establish, as well as every fair and reasonable inference to be drawn therefrom" (*Porter v. Wilson,* 39 Okla. 500, 135 Pac. 732; *Lyon v. Lyon,* 39 Okla. 111, 134 Pac. 650; *D'Yarmitt v. Cobe,* 51 Okla. 113, 151 Pac. 589.)

But this is a suit in equity, and the rule which obtains in such cases is that in an equity proceeding, where it is clearly shown that the court failed to consider competent evidence, this court may consider the entire record in the cause, weigh the evidence, and render such judgment as the trial court should have rendered. *Shock v. Fish,* 45 Okla. 12, 144 Pac. 584; *Wimberly v. Winstock,* 46 Okla. 645, 149 Pac. 238; *Tucker v. Thraves,* 50 Okla. 691, 151 Pac. 598. In *Schock v. Fish, supra,* it is said:

"From the foregoing authorities, the true rule, and which should be recognized by this court, is, in all cases which were cognizable only in a court of chancery, it is the duty of this court to consider the whole record, to weigh the evidence, and, when the judgment of the trial court is clearly against the weight of the evidence, render, or cause to be rendered, such judgment as the trial court should have rendered. We think this is a reasonable interpretation of the section of the statute quoted *supra,* and is conducive of a more speedy determination of litigation. It will, no doubt, often save the expense and trouble of a second trial in the lower court, a second appeal, and a further consideration by this court. There is no sound reason to be urged against this rule. There are many reasons why this should be the rule. It is necessary that the court examine thoroughly the entire record to ascertain if prejudicial error has been committed and injustice done. Having familiarized ourselves with the record in order to ascertain the rights of the parties, we have the same opportunity and authority to do equity between the parties and finally determine the controversy by rendering a decree as the trial court would have upon another trial, or as we would upon a second consideration of the cause. Why put the parties to the expense and trouble of a second trial, for no purpose, except for this court to have an opportunity to again re-examine the case to ascertain if prejudicial error has been committed?"

Under the authority of these cases, even if there was error in the action of the trial court in sustaining the demurrer to the evidence of defendants, such would not necessarily require a reversal, as this court is empowered to consider and weigh all of the evidence and to render such judgment here as the trial court should have rendered.

After a careful consideration of all the evidence introduced upon the trial on behalf of both plaintiffs and defendants, we conclude that the same is entirely insufficient to establish even a common-law marriage between the defendant Hunis Johnson and Susan Dyer.

It follows that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.