### GILLAM v. RICHART et al.

No. 3548.   Opinion Filed July 20, 1915.

(150 Pac. 1037.)

1.   **INFANTS—Disaffirmance of Deed—Burden of Proof.** Where a grantor seeks to disaffirm his deed on the ground that he was a minor when the deed was executed, the burden of proof is on the grantor to prove such minority, and the same rule applies to a privy in estate of the minor.

2.   **APPEAL AND ERROR—Review in Equity.** In actions purely equitable, this court has the power to examine all of the evidence, and when, from an examination, it is satisfied that the findings and judgment of the trial court are right, the judgment will not be disturbed.

(Syllabus by Devereux, C.)

*Error from District Court, Creek County;*
*Wade S. Stanfield, Judge.*

Bill by William T. Richart against J. Robert Gillam and others. Judgment for plaintiff, and defendant Gillam brings error. Affirmed on rehearing.

*Thompson & Smith, A. A. Anderson,* and *Stuart, Cruce & Cruce,* for plaintiff in error.·

*McDougal & Lytle,* for defendant in error.

Opinion by DEVEREUX, C.  This case was first decided by this court on the ground that the case-made contained no recital that all of the evidence introduced at the trial was incorporated therein, but our attention has been called, on petition for rehearing, to a statement in writing at the bottom of one of the pages of the case-made, containing this recital.  The petition for rehearing will therefore be granted.

On the merits it appears that this was a bill in equity to quiet title to a tract of land described in the pleadings filed by Wm. T. Richart against Chas. A. Scott, J. Robert Gillam, Scott Little, Louis B. Malone, Continental Land & Trust Co., H. M. Stewart, and C. M. Bradley.  It appears that the tract of land in controversy was the allotment of one Thomas McIntosh, Jr., a Creek freedman.  It appears that on the 23d of April, 1906, and on March 9, 1907, McIntosh conveyed the land to J. G. Diamond, and Diamond conveyed to the plaintiff, Richart, all of said deeds being duly recorded.  The defendants claim under conveyance made by McIntosh, the one to Gillam being dated February 5, 1908, and the controversy was whether McIntosh, the grantor in all of the deeds, was of age on the 23d day of April, 1906, or on March 9, 1907, when he made the conveyances to Diamond.  A jury was waived, and the cause submitted to the trial court, but, being an equity proceeding, the ultimate duty of finding the facts rested, in any case, with the trial court.  Much testimony was introduced by Gillam to show that McIntosh was not of age when the deed to Diamond was executed, and the trial court made extensive findings on this subject, which are as follows:

"The court has ruled in this case that the burden is upon the defendants, under the pleadings in this action.

"The testimony of Josephine Durant, Sophie Owens, Thomas McIntosh, Jr., Simon Owens, Wiley McIntosh, and Joe McIntosh is offered by the defendant.

"Taking up the testimony, first, of Thomas McIntosh, Jr., the original allottee of this land, the court finds that on the 23d day of April, 1906, he executed a deed to J. G. Diamond; that again, on the 9th day of March, 1907, he executed another deed to J. G. Diamond; that on the date of the execution of the first deed, he subscribed an affidavit that he was, at that time, over the age of 21 years; that the deed was fully explained to him; that he understood the same to be a complete transfer of all his interest in the land, his allotment. His testimony shows that he never was on his allotment, or saw it, or knew of its location. On the witness stand he identified his signature to the deed and to the affidavit. He testified upon the witness stand that he is now 24 years old. The court believes from his testimony and his affidavit, and the fact of execution of so many deeds to this land on his part, that he either does not know his age, or, if he does know it, his testimony is without proving force in this case.

"Wiley McIntosh, a very bright and intelligent witness, a man unquestionably of some education, and who, by the court, as the witnesses walked through the courtroom, was regarded as the leader of them all and the intellectual peer of all the witnesses, testifies that Thomas McIntosh, Jr., was 24 years old on the 29th day of January, 1911. He denies that he ever signed an affidavit purporting to have been sworn to before G. M. Swanson on the 24th day of April, 1906, and denies that the handwriting is his signature. He is then asked, while on the witness stand, to write his name. He writes his name with a lead pencil, and also with a pen, which signatures are marked as exhibits and are in evidence, and which, to the court, appear to be the same handwriting, identical with that of the name of Wiley M. McIntosh to the affidavit which he denies signing. It is admitted

that if G. M. Swanson, the notary public before whom this affidavit was taken, were present, he would swear that Wiley M. McIntosh duly signed and made oath to the said affidavit. Under the circumstances, the court cannot say that the testimony of Wiley M. McIntosh has any proving force or effect.

"Joe McIntosh, the father of Thomas McIntosh, Jr., on the witness stand testified that Thomas McIntosh, Jr., was born on the 29th day of January, 1887; that among other things he remembers that by reason of the fact that there was a fire in Muskogee, at which time he says Thomas McIntosh, Jr., was about three years old. He is asked while on the witness stand if he subscribed and swore to the affidavit taken on the 28th day of April, 1906, before Ellis D. Gelwick, a notary public, which he denies. Ellis D. Gelwick appeared on the witness stand, ident'fied the affidavit, and testified that Joe McIntosh, on the 28th day of April, 1906, did make the affidavit and subscribed his name to it by mark. Under the circumstances, the court does not feel that the testimony of Joe McIntosh has any proving force in this case.

"The testimony of Josephine Durant, Sophie Owens, and Simon Owens, two aunts and an uncle of Thomas McIntosh, Jr., is to the effect that Thomas McIntosh, Jr., was born on the 29th day of January, 1887. In the court's mind, Josephine Durant, of these three witnesses, is the most intelligent. She testifies that she was present at the birth of Thomas McIntosh, Jr., that a teacher in the school was boarding at their house; that her sister, the mother of McIntosh, Jr., had this man write the birthday in a Bible. Sophie Owens testified to practically the same state of facts, except that this man was not boarding there, but came by next day and wrote the birth down in the Bible.

"I do not remember so distinctly the testimony of Simon Owens, but it is practically to the same effect. They testified that they remembered this fact independ-

ently of any other occurrences. It is in the evidence that this date is more than 24 years ago.

"Either Joe McIntosh, the father of Thomas McIntosh, Jr., or Josephine Durant is mistaken with regard to the age of Thomas McIntosh, Jr., at the time of the fire in Muskogee. If Joe McIntosh is correct, Thomas McIntosh, Jr., was three years old at that time, and that was in 1887; then Thomas McIntosh, Jr., would have been of age at the time of the execution of the instrument to the plaintiff herein. If Josephine Durant is correct and the fire was in 1887, as she says, and Thomas McIntosh, Jr., was but two months old at that time, to which fact she testified, then he would not have been of age at the time of the execution of the deed to the plaintiff.

"It is in the evidence that 'the book,' called by one of the witnesses, and the Bible referred to by the others, in which the birth was written down, was taken to Muskogee and left. Then it was sent for, and found that the leaf on which this birth was written down had been torn out.

"The court feels that these witnesses who were present at the time of this birth are competent witnesses to testify to the fact independent of the Bible, and are competent to testify as to the record in the Bible at the time, but that, in the absence of the Bible, the fact that this leaf was torn out, at least clouds or suspends this statement that this birth was written in this Bible, or, perchance, that it was not January 29, 1887.

"Frankly, the court states that it has no well-defined opinion from the testimony in this case as to the age of Thomas McIntosh, Jr. The appearance, however, of Thomas McIntosh, Jr., to the court would indicate that he is not more than 24 years of age. Yet the court would not be satisfied to say, from his appearance alone, that he either is or is not 24 years of age.

"The court believes that to entitle the defendants to the relief asked in their answer and cross-petition in this case, it must appear from the testimony, facts, and circumstances in evidence, by a clear, satisfactory preponderance of the testimony, that Thomas McIntosh, Jr., was not of age at the time of the execution of either of the two deeds to J. G. Diamond, which fact does not appear to the mind of the court from all the facts and circumstances in evidence in this case.

"The finding of the court, therefore, will be in favor of the plaintiff, and exceptions allowed the defendants."

On these findings there was a judgment for the plaintiff, Richart, against Gillam, quieting the title.

The main question argued in this court was as to the burden of proof, the argument being that as the plaintiff, Richart, had no evidence of the age of McIntosh, except the deed, and the presumption arising therefrom, and as the defendant, Gillam, had introduced a number of witnesses, who testified that McIntosh was not of age when he executed the first deed, the burden being on Richart, the court was in error in its finding. We think in this state the question has been settled. In the decision in *Rice v. Ruble,* 39 Okla. 51, 134 Pac. 49, it is said:

"Where a grantor of land seeks to disaffirm her deed and recover the land on the ground that she was a minor when it was executed, she has the burden of proving minority as alleged."

Of course, if this burden is on the owner of the land, it is on her privy in estate, and in the cross-petition of the defendant, Gillam, he sets up affirmatively the fact that McIntosh was a minor when he executed the first deed, and under the authority of the above-cited case the burden was on him to prove it.

But in addition to what has been stated, this is a proceeding purely equitable, and in cases of this kind this court may examine the facts. *Shock v. Fish*, 45 Okla. 12, 144 Pac. 584; *Tucker v. Thraves, post*, p. —, 151 Pac. 598; *Hatcher v. Kinkaid*, 48 Okla. 163, 150 Pac. 182, in which last case it is said:

"In all cases which are cognizable in a court of equity," it is the duty of this court "to consider the whole record, to weigh the evidence, and, when any part of the judgment of the trial court is clearly against the weight of the evidence, to cause to be rendered such judgment as the trial court should have rendered."

The converse of this doctrine is also true, and in equity cases this court has the power to examine all of the evidence, and, when convinced that the judgment of the court below is right, to affirm it.

We have carefully examined all of the evidence in this case, and for the reasons given by the trial court above set out, we are satisfied that the judgment was right.

We therefore recommend that the petition for rehearing be granted, and the opinion heretofore filed herein be withdrawn, and this opinion substituted, and that the judgment below be affirmed.

By the Court: It is so ordered.