## REES v. EGAN.

No. 7868—Opinion Filed July 24, 1917.

(166 Pac. 1038.)

**1. Appeal and Error—Review — Equity Cases.**

In an equity action, this court is not bound by the findings of fact of the trial court, but may review and weigh all of the evidence; and, when the judgment of the trial court is not clearly against the weight of the evidence, the same will be sustained.

**2. Trusts—Trustees—Rights of.**

A trustee cannot acquire rights antagonistic to the cestui que trust and, where money has been paid over to a person to purchase property for another who furnishes the money, a trust relationship is established and the person to whom the money is paid and who has agreed to make the purchase cannot acquire the property for himself so long as the trust relationship exists.

**3. Principal and Agent—Rights of Agent —Purchase.**

Mutuality of interests constitutes a valid consideration between persons who engage to promote a common business enterprise and one who engages with others to purchase interests in an oil lease in order that money may be procured for development, and who has received the money necessary from each of his associates for such purposes, he agreeing to purchase a certain interest for each, cannot acquire the interest of one of his associates for himself and avail himself of the defense that there was no consideration for the performance of the duties which he agreed to assume in behalf of all interested.

**4. Same.**

If an agent has exhausted all efforts to buy property on terms fixed by the prin-

cipal and failed, he may relinquish his agency by expres and unequivocal acts, but he must first return to his principal the money received by him: and, before he can acquire such property for himself, by purchasing with his own funds, it must appear that there was no sharp practice or unfairness on his part, and that he has acted in good faith toward the principal.

## 5. Trusts—Constructive Trusts.

If one who has agreed to purchase property or interests in property for another and has received the money for such purpose acquires in his own name the interest which he agreed to purchase for the other, a trust will be declared in favor of the person who furnished the money to make such purchase and for whom such agent agreed to make the purchase.

(Syllabus by Stewart, C.)

Error from District Court, Okmulgee County; Ernest B. Hughes, Judge.

Action by W. E. Egan as plaintiff against W. O. Rees as defendant. Judgment for plaintiff. Defendant brings error. Affirmed.

W. W. Wood and W. W. Witten, for plaintiff in error.

D. P. Farrell, for defendant in error.

Opinion by STEWART, C. The parties will be referred to hereinafter as plaintiff and defendant as they were in the court below. The defendant, W. O. Rees, as plaintiff in error appeals to this court from a judgment of the district court of Okmulgee county rendered in favor of W. E. Egan as plaintiff and against the defendant, declaring a trust in favor of the plaintiff as to 75 shares of capital stock of the La Virge Oil & Gas Company of Okmulgee, Okla., appearing on the books of such corporation in the name of the defendant, and as to dividends received by defendant on said stock.

The defendant in his brief asks for reversal on two assignments of error, to wit:

"First. The evidence is insufficient to support the judgment; second, the findings made by the court are wholly insufficient to support the judgment."

As to the second assignment, we think that it is immaterial as to whether or not the findings of fact as made by the trial court are sufficient to support the judgment, provided the judgment is not clearly against the weight of the evidence. The action is one in equity brought to enforce a constructive trust. If it should appear to us upon an examination of the whole testimony in the case that the judgment of the trial court is not clearly against the weight of the evidence, the judgment will be sustained. In

Mendenhall v. Walters, 53 Okla. 598, 157 Pac. 732, it is said:

"In a case of purely equitable cognizance, it is the duty of the Supreme Court, when the sufficiency of the evidence to support the findings of the trial court is challenged, to consider the whole record and to weigh all the evidence, and, when the judgment of the trial court is clearly against the weight of the evidence, render or cause to be rendered such judgment as should have been rendered in the trial court."

In the case of Dandridge v. Dandridge, 59 Okla. 146, 158 Pac. 445, it is said:

"The judgment of the trial court in an equitable action, where the evidence is conflicting, should be given weight, and, unless the appellate court is satisfied that the conclusions reached by him are wrong, should be affirmed."

See, also, Johnson v. Perry, 54 Okla. 23, 153 Pac. 289; Hawkins v. Boynton Land, Mining & Inv. Co., 59 Okla. 30, 157 Pac. 753; Clayton v. Oberlander, 59 Okla. 35, 157 Pac. 929; Gillam v. Richart, 50 Okla. 144, 150 Pac. 1037.

In the instant case, therefore, this court will consider all the evidence irrespective of the findings of fact; and, if it appears that the judgment is not clearly against the weight of the evidence, the same will be affirmed.

The evidence in this case shows that in the section of the state where defendant resided Walter Steph and D. B. Smith had an oil and gas lease on 80 acres of land, that the indications were good for oil and gas on such land, and that the owners of the lease proposed to sell certain undivided interests in the same to different persons in order to procure money to drill a well; that after selling various interests in the lease, there was left unsold of the amount they originally offered one-sixteenth interest in the entire lease which they offered to sell to the defendant and others whom he might interest in the proposition; that the defendant was anxious to have the property developed for oil and gas, and on September 6, 1914, wrote a letter to a former friend and business associate, Dr. F. E. Knoch, of Florence, Colo., informing him that one-sixteenth interest in the lease in question could be obtained, and advising that, if Dr. Knoch or any one else would like to invest and would send a draft for whatever amount was wanted, he would get the papers made out and recorded, and would send them to Dr. Knoch; that he himself would take one-fourth of the one-sixteenth, or one sixty-fourth interest in the entire lease; that each

one-fourth of the one-sixteenth interest would cost $75. After the exchange of other letters explanatory of the proposition, and in September, 1914, Dr. Knoch wrote a letter to the defendant inclosing the sum of $225, and informing him that the same was in payment for interests in the lease in question as follows: One sixty-fourth interest to W. E. Stout; one sixty-fourth interest to W. E. Egan and one sixty-fourth interest to Dr. Knoch. The letter was received by the defendant; he answered, acknowledging receipt of the draft for $225, stating that as soon as drilling was commenced he would have the assignments made out and forwarded. The draft was immediately cashed by the defendant and proceeds placed in his local bank. It appears that about the 15th day of October, 1915, the defendant purchased from the owners of the lease the entire one-sixteenth interest, taking the title thereto in his own name. On October 10th, prior to taking over of the title, the defendant wrote to Dr. Knoch, stating, among other things, that he had not paid over the money but would do so. The evidence shows that at the beginning of these negotiations there was no oil well upon the land, but that a company was being organized for the purpose of drilling; that, however, before the actual purchase by the defendant of the one-sixteenth interest, drilling had begun, and there were some indications of oil and gas. Before the one-sixteenth interest in the lease was assigned to the defendant, it was suggested to the defendant that a corporation should be organized, in which event the interests in the lease would be transferred to the corporation, and that in case of nonresident owners, there might be difficulty in procuring proper assignments of interest held by them. One of the original owners of the lease said that he knew nothing about defendant's friends, and did not care to have their names unless it could be made a binding affair. The defendant then suggested he would take the one-sixteenth interest in his name and sign up for it. It was understood, however, that defendant was purchasing for himself and others, and that he was to have for himself one sixty-fourth interest, as appears from the following testimony of Mr. Steph:

"Well, I haven't the best recollection in the world of the conversation, but in my opinion, when we left he (meaning the defendant) was to write his frinds, and he didn't know how much he and his friends would take, but he had already agreed to take one sixty-fourth."

It does not appear that any objection was made to the defendant buying in his own name the one-sixteenth interest, with the understanding that his friends, after the formation of the corporation, were to share in same. The defendant paid $300 for the one-sixteenth interest purchased by check on the bank in which the money realized from the $225 draft had been deposited. Oil was struck October 20, 1914, and on October 25th a 200-barrel well was "brought in". Just after the "bringing in" of the well, and on October 27th, the defendant sent a draft for $75 to Dr. Knoch, to be delivered to the plaintiff, saying that he had purchased a one sixty-fourth interest each for Dr. Knoch and W. E. Stout, but that he was unable to procure the additional interest desired by the plaintiff, W. E. Egan. Dr. Knoch wrote a letter to the defendant, expressing his surprise, and saying that Egan would not accept the return of the draft, but insisted on his purchase. From the letter, Dr. Knoch received the impression that defendant had been able to procure only three sixty-fourths interest, and suggested to the defendant that they divide the same equally among the four, each paying his pro rata part. This proposition was not accepted by the defendant, and the plaintiff still refused the draft, insisting upon his one sixty-fourth interest in the lease. The La Virge Oil & Gas Company, of Okmulgee, Okla., a corporation, was organized under the laws of Oklahoma, and on December 3, 1914, the defendant transferred to such corporation the entire one-sixteenth interest which he had purchased, receiving for each one sixty-fourth interest 75 shares of capital stock. The defendant caused 225 shares to be issued to himself and 75 shares to his wife. He afterwards transferred 75 shares each to Dr. Knoch and W. E. Stout. The defendant in his testimony says that it was his intention all along t reserve one thirty-second interest for himself, but his testimony does not accord with his first letter to Dr. Knoch, nor with the testimony of Mr. Steph above quoted. Dr. Knoch and W. E. Stout were intimate social and business friends of the defendant, having been associated together in business in Colorado. Circumstances in the evidence show that the defendant was interested in promoting oil propositions in the section of country where the leased land was situated, and it is a fair inference from the entire testimony in the case that he knew of the developments in the well being drilled before he decided to return the money to the plaintiff. It appears that after the corporation was organized, the defendant collected dividends on the capital stock retained by him.

The defendant, in the brief submitted by him, says that it was incumbent upon the plaintiff to prove:

"First, that the defendant agreed, upon sufficient consideration, to purchase an interest in the lease for plaintiff; or second, in the absence of consideration he entered upon the performance of the agreement to purchase; or third, that defendant purchased with plaintiff's money."

Assuming that the defendant's statement is correct law, we are inclined to believe that there is evidence, not only to support one, but all three, of the propositions.

It is a well-settled principle that a trustee cannot acquire rights antagonistic to the cestui que trust. As to a consideration for the services undertaken by defendant, we may say that mutuality of interests constitutes a valid consideration between parties who engage to promote a common business enterprise. Under the undisputed evidence the defendant accepted $75 of the plaintiff's money, retained the same, agreed to perform the services, and did purchase the identical property agreed upon, giving a check upon the bank in which the defendant had deposited the plaintiff's money; the evidence shows that the defendant and the other persons for whom he agreed to act were each desirous of promoting the development of the lease in question for oil and gas; that, though the defendant had not treated directly with the plaintiff, yet, through Dr. Knoch, he had invited the plaintiff to join with him; that the plaintiff agreed to the proposal, paid the money, and the same was received and accepted by the defendant for the purpose of purchasing the interest in question.

In Bispham's Principles of Equity, p. 150, the author quotes with approval the following language:

"Whenever one person is placed in such relation to another, by the act or consent of that other or the act of a third person or of the law, that he becomes interested for him, or interested with him, in any subject or property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated."

The author cites in support of the text numerous authorities. The doctrine is well settled. Enc. of Ev. vol. 13, p. 114; 39 Cyc. p. 172.

But the defendant calls our attention to a principle of agency laid down in Mechem on Agency (2d Ed) vol. 1, § 1195, which reads as follows:

"And so it has been said that, even though the agent had been employed to buy certain land, still if he first expressly and unequivocally relinguished the agency, or if the agent had exhausted all reasonable efforts to buy on the terms fixed by the principal, there being no sharp practice or unfairness, and he afterwards buys with his own funds, no trust will arise."

The language quoted correctly states the law, but does not meet the facts in this case. For the defendant to come within the principle announced it is necessary for him to have expressly and unequivocally relinquished his agency, or for him to have exhausted all efforts to buy the interest in the lease in question, there being no sharp practice or unfairness, and afterwards to have bought with other funds. There is not the slightest evidence in this case that the defendant ever attempted to relinquish his agency before making the purchase. In none of his correspondence with Dr. Knoch does he intimate any intention of relinquishing his agency, or that he has been unable to purchase because of any objection on the part of the owner to selling plaintiff. Without returning the money or giving the plaintiff any intimation of his proposed act, he purchased for himself. In his letter (written after the purchase) returning the draft he does not say that the owners refused to sell to plaintiff, but he writes:

"When you first wrote that you would take an interest in the proposition for yourself and one for Jeff, a 1-64th each, I immediately notified Mr. Steph to save that amount for me in addition to what I had ordered for myself, which he did, but when he was over and left the assignment with me there was none of it left, so could not get the additional 1-64th, and therefore return to you herewith draft of the Citizen's National Bank of Okmulgee, No. 10889, for $75.00."

This letter was written after defendant had knowledge of the oil development on the land in question. The evidence shows that those from whom defendant purchased the one-sixteenth interest knew that defendant was purchasing the same for himself and for others, and no objection was made by the sellers. The placing of the interest in the lease in the name of the defendant was merely for the purpose of expediting the organization for the corporation. The undisputed facts show that the defendant procured from Steph and Smith all of the interest which he informed Dr. Knoch could be purchased, to wit, one-sixteenth interest, yet in his letter he says he could not get the additional one sixty-fourth. The letter is out of harmony with his first letter to Dr. Knoch, saying he would take one sixty-fourth interest for himself, also his letter of

September 28th, in which he acknowledges receipt of $225 for three sixty-fourths interest in the lease, and in which he states that he would have the assignment made and forwarded; nor is it consistent with his letter of October 10th, in which he states that he has not paid over the money yet, but will do so as soon as the well is started and the necessary arrangements made. In his letter of October 27th, he explains the taking of the assignment in his own name as follows:

"I could send your assignment to-day but I could make no reference in it to the record of the original assignment. I thought it would be best to wait until it is recorded."

The whole transaction is full of sharp practice and unfairness, and shows that before the lease was proven the defendant was willing to allow the plaintiff to bear a part of the risk, but when oil gushed forth he sought a sharp method of obtaining the reward which belonged to plaintiff.

Suggestion is made in defendant's brief that the interest was not purchased with the identical funds furnished by the plaintiff. If, indeed, under the facts in this case, this is material, we think that as he accepted the plaintiff's money, deposited the same with his personal funds in his home bank and gave a check for the identical amount furnished and for an identical amount furnished and for an additional $75 to cover the one sixty-fourth interest which he had first agreed to purchase, in fact and in law one-fourth of the interest assigned to him was purchased with funds of the plaintiff. We believe that the plaintiff in this case has established with proof, not only one, but all, of the conditions which defendant says it is necessary for plaintiff to establish.

The equity powers of the courts are broad enough to protect those suffering wrong in cases like the one at bar, and technical propositions which have no substantial foundation will not be considered. The judgment of the trial court being sustained by the weight of the evidence, the same will be affirmed.

By the Court: It is so ordered.