### In re ESTATE OF JAMES. MATTESON et al. v. JAMES et al.

No. 18033.    Opinion Filed May 15, 1928.

Rehearing Denied June 19, 1928.

(Syllabus.)

**1. Wills—Probate of Will—Conclusiveness of Findings on Appeal.**

A judgment of the trial court in probating a will and findings of the court upon issues presented by the contestants will not be disturbed, unless clearly against the weight of the evidence.

**2. Wills—Mental Capacity of Testator—Existence of Guardianship not Conclusive of Incapacity.**

The existence of a guardianship does not of itself constitute legal incapacity to make a will, but is no more than evidence of the fact of incapacity, and may be overcome by parol proof that testator was mentally competent at the time the will was executed.

**3. Same—Question of Fact—Mental Status at Time of Making Will to Control.**

The question of mental capacity to make a will is a question of fact, and is to be determined from the condition of testator's mind at the time of making the will.

**4. Same—Evidence as to Mental Status Prior or Subsequent to Time of Making Will.**

In determining the mental status of a testator in a will contest case, the question to be determined is: Did the testator possess testamentary capacity at the time of making the will? The prior or subsequent mental status has bearing only to the extent of helping to determine the mental status at the time of the execution of the instrument. In re Chandler's Will, 102 Me. 72, 66 A. 215; Bilby v. Stewart, 55 Okla. 767, 153 Pac. 1173.

**5. Wills—Probate of Will—Burden of Proof.**

The proponent of a will must make the preliminary proof required by statute as to the execution of the will and the soundness of mind of the testator, whereupon, in case of a contest, the burden shifts to the contestant to prove the matters set forth in the objections filed.

**6. Same—Essentials of Testamentary Capacity.**

When the testator, in making a will, understands the nature and consequence of his acts and is free from duress, menace, fraud, and undue influence, he has "testamentary capacity."

**7. Same—Finding of Testator's Mental Capacity Sustained on Appeal.**

The trial court having found as a fact that testator was mentally competent to dispose of his property at the time of making his will, and such finding not being against the weight of the evidence, the judgment based thereon will be affirmed.

Error from District Court, Osage County; Jesse J. Worten, Judge.

Grace Roan Matteson, Fred Roan Martin and others objected to the probate of the will of Roy James, deceased, offered by proponent, Josephine James. The county court refused to admit the will to probate and proponent appealed, and from a judgment of the district court, admitting said will to probate, contestants named appeal. Affirmed.

John L. Arrington, Chas. R. Gray, and J. M. Humphreys, for plaintiffs in error.

H. C. Hargis and F. O. Yarbrough, for defendants in error.

MASON, V. C. J. This case presents a contest over a will. Roy James, a full-blood Osage Indian, on the 21st day of November, 1923, executed a will, the material parts of which are as follows:

"(1) I give, grant, bequeath and devise to my brother, Lewis James, and to my sister, Mary James, $1 each and no more, and I have purposely refused to give them more than $1 each because they are well fixed and do not need it.

"(2) I give, grant, bequeath and devise to my wife, Josephine James, all of the residuum of my estate, both real and personal, wherever located, and including all of my annuities and royalties which may come to me as an Osage allottee."

He died on the 18th day of January, 1924. The widow, Josephine James, began this proceeding in the county court of Osage county to probate such will. Grace Roan Matteson, a niece, Fred Roan Martin, a nephew, by their respective legal guardians and guardian ad litem, and Louis James, half-brother, and Mary James, a half-sister, and Eva Bean, a former wife, all objected to the will being probated on the grounds of lack of testamentary capacity on the part of the testator, duress and undue influence, and that the formalities required by the statute were not complied with in the execution of the will so as to entitle it to probate. A hearing was had and the probate of the will was denied in the county court, and an appeal was perfected by the proponent

to the district court of Osage county. The case was tried de novo in the district court, and the will ordered admitted to probate, and two of the contestants prosecute their appeal to this court and the other contestants, together with the proponent, have been made defendants in error.

The evidence in the case discloses that, several years prior to the date of the execution of the said will, guardianship proceedings were had in the county court of Osage county, in which the court found that ▸the said Roy James was incapable of taking care of himself and managing his property and that he was an incompetent person and a common drunkard, and a guardian was appointed, who qualified and was acting as such at the time of the execution of the will involved herein by Roy James and at the date of his death.

A large number of witnesses, including several physicians, testified relative to the mental capacity of the said Roy James and his ability to understand the nature of his act at the time said will was executed. The evidence upon this issue was not without conflict. The trial court made findings of fact which, in substance, are as follows: That Roy James was an habitual drunkard at the time of the execution of this will, and had been for some three or four years prior thereto; that there were times when he was sober and at which times he discussed current events and topics of the day in a rational way and knew in a general way the manner in which the business of the Osages was being conducted and knew the customs of the Osages with reference to marriage and divorce. The court also found that practically all of the witnesses for the proponent of the will testified that they had talked with Roy James at times when he was not under the influence of liquor and that he displayed average intelligence for an Osage Indian; that some of the witnesses went so far as to say he was above the average or unusual in intelligence at times when he was not drunk. The court also found that at the time of the execution of the will, the deceased, Roy James, was sober, and further found that when he was sober he was of such mental condition that he could execute a will, and further found that there was no evidence that undue influence had been used to secure the execution of the will. The court then rendered judgment that the will be admitted to probate.

We have read the record of the testimony, and we cannot say that the finding of the trial court is against the weight of the evidence. This being true, the finding will not be disturbed. Hixon v. Hubbell, 4 Okla. 224, 44 Pac. 222; Holt v. Murphy, 15 Okla. 12, 79 Pac. 265; affirmed in 207 U. S. 407, 28 Sup. Ct. Rep. 212, 52 L. Ed. 271; Eager v. Seeds, 21 Okla. 524, 96 Pac. 646; Marrs v. Barnes, 55 Okla. 590, 155 Pac. 560; In re Wah-kon-tah-he-um-pah's Estate, 109 Okla. 126, 234 Pac. 210. Nor will the judgment of the trial court be reversed where supported by the clear weight of the evidence. Rees v. Egan, 66 Okla. 20, 166 Pac. 1038; Crump v. Lanham, 67 Okla. 33, 168 Pac. 43; Winemiller v. Page, 75 Okla. 278, 183 Pac. 501.

It appears that the contestants offered in evidence a copy of the judgment of the county court appointing a guardian for Roy James, but that the trial court admitted the same for the limited purpose of showing that Roy James was under guardianship. Appellants insist that this constitutes reversible error. A full copy of the judgment appears in the record and will be considered by this court in disposing of the appeal. Therefore, such error, if any, is harmless.

It is next urged that, inasmuch as Roy James had been judicially declared a common drunkard and mentally incompetent, the proponent of the will had the burden of establishing testamentary capacity, and, inasmuch as she failed to introduce testimony showing his restoration to competency, the court erred in admitting the will to probate. In support of this contention, counsel cite section 4983, C. O. S. 1921, which provides:

"After his incapacity has been judicially determined, a person of unsound mind can make no conveyances or other contract, nor designate any power, nor waive any right, until his restoration to capacity is judicially determined. But if actually restored to capacity, he may make a will, though his restoration is not thus determined."

This section does not support the contention of counsel, but specifically provides that if actually restored to capacity, a will may be made, though the restoration is not determined.

This precise question has been before this court in the following cases: In re Wah-kon-tah-he-um-pah's Estate, supra; Exendine v. Red Corn, 108 Okla. 1, 232 Pac. 46; McClure v. Kerchner, 107 Okla. 28, 229 Pac. 589; Lena et al. v. Patterson, 113 Okla. 156, 242 Pac. 238.

In Lena et al. v. Patterson, supra, the second paragraph of the syllabus provides:

"The existence of a guardianship does not of itself constitute legal incapacity to make a will, but is no more than evidence of the fact of incapacity and may be overcome by parol proof that testatrix was mentally competent at the time the will was executed. The question of mental capacity to make a will is a question of fact, and is to be determined from the condition of testatrix's mind at the time of making the will."

It is further insisted that, inasmuch as Roy James was under guardianship at the time the will was executed, the burden was on the proponent to show testamentary capacity. Section 1106, C. O. S. 1921, provides that on the trial of a will contest the contestant is plaintiff and the petitioner is defendant, from which it must be assumed that the burden of proof is upon the contestant. The petitioner, of course, must make the preliminary proof required by statute as to the execution of the will and the soundness of mind of the testator, whereupon, in case of a contest, the burden shifts to the contestant to prove the matters set forth in the objections filed, including soundness of mind and testamentary capacity in case same is in issue. If, however, the burden were on the petitioner, in the case at bar, the record in this case justifies us in saying that the proponent has assumed and met the same. The uncontradicted and almost overwhelming weight of the evidence is that the testator in making said will understood the nature and consequence of his acts and was free from duress, menace, fraud, and undue influence and understood the nature of his act at the time the will was executed, and the evidence, without conflict, discloses that the will was duly executed and attested.

From the foregoing, we conclude that the trial court properly admitted the will to probate, and the judgment is, therefore, affirmed.

HARRISON, PHELPS, LESTER, HUNT, and CLARK, JJ., concur.

Note.—See under (1) 40 Cyc. p. 1358. (2) 40 Cyc. p. 1041; anno. 8 A. L. R. 1375; 28 R. C. L. p. 100; 3 R. C. L. Supp. p. 1559. (3) 40 Cyc. p. 1028; 28 R. C. L. p. 405; 5 R. C. L. Supp. p. 1535. (4) 40 Cyc. p. 1029; 28 R. C. L. p. 93; 6 R. C. L. Supp. p. 1703. (5) 40 Cyc. pp. 1020, 1272; 28 R. C. L. p. 398; 3 R. C. L. Supp. p. 1573; 6 R. C. L. Supp. p. 1725. (6) 40 Cyc. p. 1004; anno. 27 L. R. A. (N. S.) 2; L. R. A. 1915A, 444; 28 R. C. L. p. 86 et seq.; 4 R. C. L. Supp. p. 1799; 6 R. C. L. Supp. p. 1703.