Long v. Brown et al.

*98 P 2d 28.*

No. 26949.   Oct. 3, 1939.

Rehearing Denied Jan. 23, 1940.

Creekmore Wallace and Don Anderson, for plaintiff in error.

Duff & Manatt, for defendants in error.

RILEY, J. Thomas W. Long, the sole issue of Lizzie Long and Ben Long, full-blood Creek Indians, filed an action to quiet title to, recover possession of, and reasonable rental during detention of a portion of the allotment of his mother, who was properly enrolled as a member of the Five Civilized Tribes.

Ben Long died in 1914. In 1921, Lizzie Long and John W. Brown, hereinafter referred to as Brown, were married, and lived together thereafter until her death April 30, 1929.

In 1926, Brown was appointed guardian of plaintiff and continued as such until plaintiff attained his majority September 30, 1932.

On May 14, 1929, Brown, in consideration of $2,500, executed a deed purporting to convey to defendant Robert Adams an undivided one-half interest in the 40 acres of land in question. On the same date Brown filed a petition with the county court of Wagoner county seeking approval of said deed, and the same was on that date allowed.

Also, on May 14, 1929, Brown filed in the same court a petition for letters of administration in the estate of Lizzie Brown, nee Sarty, deceased. In accordance with the prayer of said petition, Brown was in due time appointed administrator.

On June 8, 1929, Brown, as guardian of Thomas W. Long, filed a petition for the sale of plaintiff's inherited interest in the Lizzie Long allotment, and the same was set for hearing July 13, 1929. On the last date a petition was filed on behalf of plaintiff requesting the sale of said interest. The U. S. Probate Attorney filed a protest against the guardian's petition for the sale of the land and alleged that Brown was not the lawful husband of Lizzie Long, and that Thomas W. Long was the sole heir of Lizzie Long. The protest was overruled; the sale of all of the inherited interest of the plaintiff in the 40-acre tract was ordered, and appraisers were appointed who made the following report:

"We the undersigned appraisers * * * do make the following appraisal of said land at a fair cash value, that is to say.

"Description of Land Appraised Value.

"All of the inherited interest of the said Minor in and to the Northeast Quarter of the Northeast Quarter of Section Nine (9) Township Nineteen (19) North, Range Fourteen (14) East, situated in Tulsa County, Oklahoma.

"The entire above described 40 acres in fee appraised at $70.00, per acre, to-wit $2800.00.

"Respectfully submitted this 18th day of July, 1929.

"John L. Baldridge
"E. L. Riley
"S. S. Cobb, Appraisers."

Defendants Robert Adams and J. C. Reddin filed the only bid, as follows:

"I herewith submit my bid in the sum of $2,520.00, for all of the inherited interest of Thomas W. Long, a minor, in and to the following described land situated in Tulsa County, Oklahoma, to-wit:

"The Northeast Quarter of the Northeast Quarter of Section 9, Township 19 North, Range 14, East of the Indian Meridian.

"Such bid herewith submitted includes a merchantable title to all of the interest of the said minor in said land. I enclose check for $252.00, being 10% of the bid.

"Respectfully yours,
"Robert E. Adams,
"J. C. Reddin."

On August 4, 1929, the guardian sold the land to defendants Adams and Reddin, and the sale was confirmed September 14, 1929, and deed issued where-

by "* * * all the right, title, interest and estate inherited and owned by the said minor Thomas W. Long * * *" in the land was conveyed.

On December 4, 1929, a final decree was entered in the estate of Lizzie Brown, deceased, wherein Thomas W. Long, son, and John Brown, husband, were decreed the sole and only heirs of Lizzie Brown and an undivided one-half interest in her estate was decreed to each.

On December 10, 1929, Adams and Reddin executed notes payable to the Exchange National Company of Tulsa in the amount of $4,000, payable January 1, 1933, and gave as security therefor a mortgage on the land in question. Adams was a member of the board of trustees of said company. The mortgage was filed of record December 11, 1929.

On December 21, 1932, plaintiff filed his petition herein, and on May 12, 1935, filed his first amended petition containing three causes of action. In the first cause of action plaintiff prayed judgment quieting title in himself and for possession. For his second cause of action plaintiff alleged John Brown was a person of African descent; that his marriage in 1921 to Lizzie Long was invalid, and Brown did not inherit any of the estate of Lizzie Long; that the deed from Brown to Adams, executed May 14, 1929, was void; that Brown at all times therein mentioned was the duly appointed, qualified, and acting guardian of the plaintiff; that immediately upon the death of Lizzie Long, Brown entered into conspiracy to cheat and defraud plaintiff out of his property; that pursuant to said conspiracy Brown filed a petition in the county court for the sale of his ward's (plaintiff's) land; that the facts set forth in said petition for sale were false and so known to be by the defendants; that the petition purposely concealed from the court the fact that plaintiff was the owner of the entire fee; that the court, relying upon the representations that plaintiff only owned a one-half interest, appointed appraisers to appraise the inherited interest of plaintiff; that the appraisers only appraised an undivided one-half interest, although at that time plaintiff owned the entire fee; that by reason of such fraud the appraisers were prevented from fixing the true value of the property and the same sold for less than 90 per cent. of its appraised value; that defendants placed on record the void deed whereby Brown purported to convey an undivided one-half interest to the defendants and that the same was of record on the date of the guardian's sale; that said deed operated to stifle competitive bidding at the sale; and that said guardian sale proceedings were void.

For his third cause of action plaintiff alleged the defendants had been in illegal possession of the tract since September 14, 1929; and that the reasonable annual rental value thereof was $200; and prayed judgment for $800, damages for the detention of said property for the last four years.

Defendants in their answer averred the marriage of Lizzie Long and Brown was valid, without specifically denying Brown was of African descent; that the guardian's sale was regular; that $2,520 had been paid in accordance with the terms of their bid; that the protest of the U. S. Probate Attorney was fully considered by the court, and the judgment thereon was conclusive of all matters raised; and specifically denied fraud or misconduct on the part of the defendants.

In his reply plaintiff alleged Adams and Reddin knew at the time of the guardian's sale that John Brown was a person of African descent or had information sufficient to put them on inquiry; that the county court knew at the time the U. S. Probate Attorney filed the protest that John Brown was a person of African descent, and in conjunction with the guardian permitted a fraud to be perpetrated on plaintiff's estate; that no hearing on the protest as recited in the judgment was had, and the matters therein raised were never adjudicated; that the appraisers' return was based upon their understanding that the in-

herited interest of plaintiff was an undivided one-half; that the bid of Adams and Reddin was conditional and therefore void.

During the trial, October 8, 1934, it developed that plaintiff had omitted making the Exchange National Company, mortgagee, a party defendant; that the mortgage had been assigned to, Selma Lamb, December 27, 1929; that the assignment had been recorded April 9, 1934; and that prior thereto the Exchange National had become insolvent and that the National Bank of Commerce had been appointed successor trustee for Selma Lamb. It later developed that Fred W. Steiner had replaced the National Bank of Commerce as trustee of Selma Lamb.

Selma Lamb and Fred W. Steiner, trustee, were made parties defendant, and plaintiff filed a supplemental petition wherein he adopted the allegations of his original and first amended petitions, and further alleged that by virtue of the allegations therein contained Selma Lamb and her trustee did not acquire any right or interest in the tract in question.

Steiner, trustee, in his answer adopted the averments of the answer of Adams and Reddin; and further alleged that the Exchange National Company took the notes and mortgages in question in due course of business and was an innocent encumbrancer; that the Exchange National Company through error assigned the notes and mortgages to Selma Lamb, whereas they should have been assigned to the Exchange Trust Company of Tulsa in trust for Selma Lamb; that Selma Lamb was an innocent purchaser in due course, that the maturity date of said notes and mortgage had been properly extended; that Adams and Reddin had held said property adversely to plaintiff since September 16, 1929, and plaintiff was barred by the five-year statute of limitations as to the trustee and his beneficiary; and that the plaintiff became of age September 30, 1932, and did not file his action against the trustee and his beneficiary within two years thereafter as required by section 100, O. S. 1931.

Plaintiff adopted the allegations of his reply to the answer of Adams and Reddin, and for further reply alleged that Adams was a director of both the Exchange National Company and the Exchange Trust Company; that Selma Lamb appointed the Exchange Trust Company as her trustee and Adams acted as her agent; that the assignment to Selma Lamb was not executed until April 9, 1934, at which time the assets of both companies were taken over by the State Bank Commissioner; that plaintiff did not and could not discover the fraud of Adams until after the assets of said companies were taken over by the Bank Commissioner; that the action against Steiner and his beneficiary was begun within twelve months thereafter; that neither Steiner, trustee, nor Selma Lamb acquired title until after the notes were past due; and that the extension agreement was invalid because executed by defendant Adams.

The trial was concluded July 12, 1935, and the court rendered judgment generally for defendants Adams and Reddin and Brown, and made special findings and conclusions in the action against Steiner, trustee, and Selma Lamb, holding that Steiner, trustee, was an innocent holder in due course; that there was no fraud or bad faith in connection with the execution of said notes and mortgage or in the subsequent transfers thereof; and quieting title to the same in Steiner, as trustee for Selma Lamb.

A motion for a new trial was filed in due time, and from a judgment overruling the same, this appeal is prosecuted.

Defendants filed a motion to dismiss this appeal, and the same was temporarily denied without prejudice to reconsideration when the cause was considered on its merits.

On the 28th of October, 1935, the trial court made an order extending the time to make and serve case-made "* * * to

and including the 1st day of December, 1935." The 1st day of December fell on Sunday, and on Monday, the 2d day of December, the court made an order allowing another extension of time to and including the 3d day of January, 1936, to make and serve case-made.

Defendants contend plaintiff should have served his case-made or secured an order extending the time for service thereof on or before December 1, 1935, and that his failure to do so rendered it a nullity.

The pertinent part of section 45, O. S. 1931, 25 Okla. St. Ann. § 71, reads as follows:

"Holidays are every Sunday. * * *"

Section 22, O. S. 1931, 12 Okla. St. Ann. § 73, provides:

"The time within which an act is to be done, shall be computed by excluding the first day, and including the last; if the last day be Sunday, it shall be excluded."

Section 51, O. S. 1931, 25 Okla. St. Ann. § 80, provides:

"Whenever any act of a secular nature, other than a work of necessity, or mercy, is appointed by law or contract to be performed upon a particular day, which day falls upon a holiday, such act may be performed upon the next business day, with the same effect as if it had been performed upon the day appointed."

Plaintiff contends that under the last-cited section the order of December 2nd, extending the time for serving case-made, was made within proper time.

Defendant urges that this question is settled in this jurisdiction by the case of Day, Adm'r, v. Hartness et al., 85 Okla. 298, 205 P. 501, wherein the first two paragraphs of the syllabus read as follows:

"Where the time within which to serve a case-made was extended up to and including January 30th, service was required before the expiration of that day."

"Section 5341, Rev. Laws 1910, providing, 'the time within which an act is to be done shall be computed by excluding the first day, and including the last; if the last day be Sunday, it shall be excluded' does not apply to an order extending the time for serving a case-made up to and including January 30th so as to authorize service on January 31st, though January 30th falls on Sunday."

The Day Case cites and follows Buck's Stove & Range Co. v. Davidson (Kan.) 79 P. 119, and Zelig v. Blue Point Oyster Co. (Ore.) 113 P. 852, both of which hold that a statute such as section 22, O. S. 1931, does not apply where the wording of the order sets a specific date for its termination, but that such order must be construed according to its own terms.

Plaintiff urges the question is controlled by the case of Boynton Land, Mining & Inv. Co. v. Runyan, 29 Okla. 306, 116 P. 809, wherein the trial court allowed an extension of 30 days from the 3rd day of December, 1911. The case-made was served January 3, 1912. The court said:

"Under section 6258 (sec. 22, O. S. 1931) supra, the 3rd day of December must be excluded in the computation. That would leave 28 days in the month of December, and by including the last day that would bring the 30 days allowed to include the 2d day of January, 1911. But the 1st day of January, 1911, fell on Sunday, and under sections 2954 (sec. 45, O. S. 1931), 2955 (sec. 46, O. S. 1931), and 2957 (sec. 51, O. S. 1931) supra, the last day, to wit Monday, which was the 2d day of January, A. D. 1911, became a holiday. The time within which the plaintiff in error was permitted to serve his case-made having expired upon a holiday under section 2957 (sec. 51, O. S. 1931), such case-made was permitted to be served upon the next day, which was the 3rd day of January, A. D. 1911.

"We conclude the case-made was therefore served in time, and the motion to dismiss the appeal is accordingly overruled. All the Justices concur."

With plaintiff's contention we agree.

The two cases cited as authority in

Day, Adm'r, v. Hartness, supra, are from Kansas and Oregon, respectively, neither of which states had a statute such as section 51, O. S. 1931. In the Day Case section 51 is not mentioned. No response was filed to the motion to dismiss, and it is doubtful if section 51 or the Boynton Case was ever called to the attention of the court.

Other jurisdictions have reached conclusions in accord with the Day Case, but no statutory provision similar to section 51, supra, was involved.

On the other hand, this court specifically discussed and applied section 51 in the Boynton Case, where the question of the service of a case-made was involved. We find no fault with Day, Adm'r, v. Hartness, supra, insofar as it construes section 22, O. S. 1931, in accordance with the Kansas and Oregon rules for the computation of time. But after finding that the day specifically mentioned in the order is the day on which the order terminates, and that day falls on Sunday or any other holiday, then section 51, O. S. 1931, applies and the case-made may be served on the following day, or an order extending time for the service thereof secured. This should be true without regard to whether the extension is "to and including" a certain day, or for so many days from a certain date. Insofar as Day, Adm'r, v. Hartness is contrary to the above, it is hereby disapproved.

It is further urged that serving a case-made is not an act "appointed by law or contract" as provided in section 51, supra, and our attention is called to the case of Chaney v. Canfield (Cal.) 111 P. 92, wherein it is held "* * * the word 'law' means some statutory provision or rule of law. * * *" But subsequent constructions of the California statute, similar to section 51, supra, are in harmony with the Boynton Case, supra. People v. Malone (Cal.) 2 P. 2d 332. See, also, Jeremy Fuel & Grain Co. v. Denver & R. G. R. Co. (Utah) 203 P. 863, wherein the court in construing the Utah statute, identical with ours and taken from the Code of Civil Procedure of California, quoted from State ex rel. Bickford v. Benson (Wash.) 58 P. 217, as follows:

"Aside from this, the objection is highly technical, too much so, in fact, upon which to deny so substantial a right as the right to an appeal."

In addition to the Boynton Case, supra, we find that this court has construed section 51, supra, as providing an extra day of grace for giving notice to a justice of the peace to view and assess damages caused by restrained cattle (McDonald v. Cobb, 54 Okla. 365, 154 P. 345); as providing an extra day of return of a summons (Harn v. Mo. St. Life Ins. Co., 70 Okla. 120, 173 P. 214, and Wilson & Co. v. Russell, 144 Okla. 284, 290 P. 1106).

The weight of authority as well as the better reason justifies a construction of section 51, supra, as providing an extra day within which to serve a case-made or secure an extension of time for service thereof where the previous order expires on a Sunday or some other holiday. The motion to dismiss this appeal is overruled.

We will first dispose of defendant's contention that plaintiff's petition does not state facts sufficient to constitute a cause of action.

The allegations contained in plaintiff's second cause of action are set forth in substance above. Defendants quote from Wray v. Howard, 79 Okla. 223, 192 P. 584, as follows:

"A mere allegation of fraud is a conclusion and is not sufficient. The general rule is that the specific facts constituting fraud must be averred, unless, of course, the facts alleged are such as in themselves constitute fraud."

The facts alleged in plaintiff's second cause of action are such as in themselves constitute fraud. Furthermore, the petition alleges improper appraisal; sale for less than 90 per cent. of the appraised value at a private sale; inadequacy of consideration coupled with fraud and an inexcusable irregularity of the defendant in permitting a deed to one-

half interest in the land to remain of record during the sale, thereby clouding plaintiff's title and stifling competitive bidding. The petition is sufficient.

Plaintiff contends that the marriage between Lizzie Long and Brown was void, and defendants can claim nothing by conveyance from Brown, and whether they are innocent purchasers from him is immaterial.

Plaintiff introduced in evidence various records of the Superintendent of the Five Civilized Tribes to prove Brown was a person of African descent. These records were duly certified by the acting superintendent, and were admissible under the provisions of section 334, O. S. 1931. In re Estate of McDade, 95 Okla. 120, 218 P. 532.

The records as introduced show that Dinah Johnson and Houston Brown were enrolled as Creek freedmen. On direct examination, John Brown testified that Dinah Johnson and Houston Brown were his mother and father, respectively. The Freedmen Roll for No. 4464, John Brown, prepared April 18, 1899, shows that Dinah Johnson and Houston Brown were the parents of John Brown. This was sufficient to make a prima facie case and to overcome the presumption of validity in favor of the marriage between Lizzie Long and John Brown. Mowdy v. Leeper, 122 Okla. 16, 250 P. 432; Warren v. Cannard, 30 Okla. 514, 120 P. 599; Cox v. Colbert, 135 Okla. 218, 275 P. 317.

Of interest at this point is the following portion of the defendant's opening statement:

"* * * I presume the roll will show he was a freedman."

It should also be borne in mind that the defendants did not deny John Brown was of African descent except by general denial, and that no evidence was offered to dispute that offered by plaintiff. Defendants do not now contend that Brown was not of African descent, but rely solely upon the theory that there is no properly admitted competent evidence to sustain a finding that Brown was of African descent.

The trial court found generally for the defendants Adams and Reddin and John Brown. Such a general finding for a party finds all issues in his favor. Obviously it was against the clear weight of the evidence for the court to find on this record that the marriage was valid. Section 1677, O. S. 1931; Eggers v. Olson, 104 Okla. 297, 231 P. 483.

The marriage being void because John Brown was a person of African descent, he could not inherit from his wife by reason thereof. Blake v. Sessions, 94 Okla. 59, 220 P. 876; Eggers v. Olson, supra. The grantee, Adams, acquired no interest in the land in question by virtue of the deed from John Brown.

It is next contended by the plaintiff that the bid by Adams and Reddin, supra, was a conditional bid and rendered the sale void, and that such defect appearing on the face of the record was constructive notice to subsequent purchasers and mortgagees.

In support thereof, plaintiff cites In re Standwaitie's Estate, 73 Okla. 255, 175 P. 542, In re Bradley's Estate (Cal.) 144 P. 136, and Tucker v. Leonard, 144 Okla. 264, 291 P. 124, to the effect that a guardian's sale of real estate is a judicial sale to which the rule of caveat emptor applies, and that only an unconditional bid can be considered at such a sale.

The two cases first cited were direct appeals from the order of the trial court on the hearing for confirmation of sale. But in Tucker v. Leonard, although the Bradley and Standwaitie Cases, supra, were cited and relied upon, the order of confirmation, unappealed, had been entered long prior to the attack thereon. It was unnecessary to base the decision in Tucker v. Leonard on the ground that the bid was conditional. We believe it was improper to do so, and to that extent Tucker v. Leonard is hereby overruled. The proper statement of the rule is that a guardian's sale of his ward's land is a judicial sale to which the rule

of caveat emptor applies. The guardian has no authority to accept, and it is error for the court to confirm, a sale to a party based upon a conditional bid. But if a guardian erroneously accepts such a bid, sells the property to such conditional bidder, makes his return thereon, and the same is confirmed by the court, an objection that the bid is conditional is available only upon appeal from the order of confirmation.

In the instant case, the plaintiff upon attaining majority had the right to institute action attacking the order confirming the sale. He chose to attack with an independent suit in equity based upon fraud. In such a proceeding, under the facts of this case, the objection that the bid was conditional is untenable.

This being a proceeding in equity, it is the duty of this court to review the entire record and render such judgment as should have been rendered below. The record reveals some highly interesting and unusual inconsistencies.

The warranty deed to an undivided one-half interest executed by Brown to Adams, the petition for approval thereof, and the petition for letters of administration of the estate of Lizzie Brown were all subscribed or verified by Brown on May 14, 1929, before the same notary public. On that date the judge approved Brown's deed. In both petitions, and in the order approving the deed, it was recited that John Brown and Thomas Long were heirs of Lizzie Brown.

Later the court appointed John Brown administrator of the estate of Lizzie Brown.

At the hearing of the guardian's petition to sell plaintiff's entire inherited interest the court overruled the U. S. Probate Attorney's protest wherein it was alleged John Brown was not the lawful husband of Lizzie Brown and was not an heir of her estate. In his opening statement in the instant case, counsel for defendants said:

"Among the things which the United States Probate Attorney raised at that time was that this child owned the fee and not anything less than the fee. The court took evidence on it. They had a hearing and the court found against the United States Probate Attorney's contention."

In the guardian's sale proceedings the court set the additional bond for the sale of the plaintiff's inherited interest at $2,500. This is significant in view of the fact that the deed to an undivided one-half interest from Brown to Adams recites a consideration of $2,500, as also did the petition for the approval of the deed. In the order approving the petition it is recited that $2,500 was paid to Brown in open court and the court found it a fair and reasonable consideration. On December 4, 1929, the same judge stated in the final decree in the estate of Lizzie Brown that John Brown and Thomas Long were the sole and only heirs of Lizzie Brown and each entitled to an undivided one-half interest in her estate. At the trial of the instant case one of the appraisers of the land prior to the guardian's sale testified that at the time of the appraisal he knew a one-half interest had been sold and he thought they were appraising an undivided one-half interest.

Defendant's contention places the probate court in the strange position of finding that $2,500 was a fair and reasonable consideration for an undivided one-half interest on May 14, 1929, and then finding that $2,520 was a fair consideration for the entire fee of the same tract on August 29, 1929, approximately three and one-half months later. No showing was made that the value of the land declined during that short period. On the contrary, there is abundant evidence pointing to the fact that the value of the land at the time of the appraisal was about $5,000 or more.

We must conclude that throughout the proceedings the court considered Brown an heir of the estate and intended to order and have appraised an undivided one-half interest, and to confirm the sale of an undivided one-half interest, despite the fact the proceedings were drawn to convey the entire fee which the plaintiff held at that time. A conclu-

sion to the contrary is refuted by the record.

There is yet another angle, perhaps more properly termed a paradox, that is disclosed by the record. It is contended strenuously that Adams and Reddin purchased the entire fee to the 40 acres at the guardian's sale. The attorney who advised Adams concerning the guardianship sale testified he told Adams the appraisement covered the entire fee and that Adams would obtain the entire fee at the guardian's sale.

Defendant Adams, called as a witness in behalf of the plaintiff, testified on direct examination that he bought at the probate sale on the theory he had already acquired a half interest from Brown, but upon cross-examination, he testified as follows:

"Q. Well, what did you bid on when you bid to buy this land? A. I bid on the fee—the entire fee. * * * A. Well, I would not bid at all without I could acquire the entire fee interest at that sale on account of the question that had been raised as to the amount of the interest that was inherited. Q. And did he (Adams' attorney) advise you whether the property had been appraised in fee or in an undivided interest? A. He advised me that the entire fee interest had been appraised as though—Q. Why did you bid this $2,520? A. Because that was 90 per cent. of the entire appraisal of the property. Q. In other words, you were taking no chances on interest? A. That's right. Q. You were buying on the basis of the entire fee? A. Yes, sir. * * * A. My answer is as I have already stated, when the question came up by the probate attorney, I bought it on the theory and paid my money out on the theory that I would buy the entire fee interest at that sale or not buy at all. * * * A. I bought on the theory that I would not buy that land unless the court would sell all the interest of the minor."

The above contradictions in Mr. Adams' testimony are equaled only by his conduct in relation to the sale. Let us consider his testimony in the light most favorable to him, viz., that the proceedings in the guardianship sale show on their face that the entire interest of the minor was being sold, still we cannot lose sight of the fact that at that time covered by the above testimony Mr. Adams' deed from Brown purporting to convey an undivided one-half interest in the tract was of record and had been of record since May 17, 1929. This recorded deed was notice to all prospective bidders that Adams claimed a half interest and that not more than a one-half interest was being sold at the guardian sale. Yet, in defendant's brief we read: "In the case at bar the fee was appraised and the bid was 90 per cent. of the fee. Consequently we are free from trouble arising from any complication with refernce to the appraisement of the interest." Charity compels us to admit Adams and Reddin are consistently inconsistent. The recorded deed amounted to a legal chilling of any prospective bids for the entire fee and is alone sufficient to set aside the guardian's sale insofar as Adams and Reddin are concerned.

The purchasers, Adams and Reddin, deemed the land of plaintiff a good investment and sought to purchase it. Both judgment and desire in and of themselves were legitimate. Negligence in ascertaining Brown's interest resulted in an improvident payment of $2,500 to Brown for an interest he did not own.

As soon as Adams and Reddin became suspicious of Brown's heirship, they could easily have questioned him on the matter. At the trial he recalled without difficulty the names of his father and mother. His enrollment indicates he was well past his majority when he signed his application. His testimony indicates rather high intelligence. He knew he was enrolled as a freedman. The purchasers not only had notice sufficient to place them on inquiry, they had at their disposal means to correctly ascertain Brown's identity. Failure to do so was further negligence.

The law and the courts in their administration of the law are always watchful of the interests of a minor to

the end he may be protected not only against his own improvident actions, but also against the avaricious schemes of those his senior. To effectuate this policy the device known as a guardianship was originated. It is a fiduciary relationship wherein the guardian must jealously protect the interests of his ward. It is important, therefore, that no conflict of interest arise between the two.

In the instant case Brown's personal interest was diametrically opposed to his duty as guardian and to the interests of his ward, the plaintiff. If it was proved Brown inherited nothing, then he would have been called upon to return $2,500 to Adams and Reddin. It is natural Brown became a willing and passive participant favorable to the purchasers.

The attorney for the guardian was representing the interests of the minor. He knew or possessed information by which he should have known that plaintiff owned the entire fee. Had he acted in the commendable manner of counsel for the administratrix in the case of In re Bradley, supra, this litigation doubtless never would have arisen. It seems the purchaser, the guardian, and the latter's attorney, like the simian trio, could see no evil, speak no evil, and hear no evil.

This court has consistently held that where gross inadequacy of price is shown, a slight showing of fraud or irregularity is sufficient to set aside a judicial sale. State v. Wilson, 124 Okla. 236, 254 P. 968; Wheeler & Motter Mercantile Co. v. Wright, 64 Okla. 97, 166 P. 184; State v. Sutton, 127 Okla. 35, 259 P. 551. The judgment of the trial court insofar as the defendants Adams and Reddin and Brown are concerned is against the clear weight of the evidence, and is hereby reversed.

We now proceed to a consideration of the effect on defendants Selma H. Lamb and her trustee, Fred W. Steiner, of the conduct of defendant Adams, who was a member of the board of directors of both the Exchange National Company and Exchange Trust Company at the time the mortgage on the property involved was executed by Adams and Reddin to the Exchange National Company and its subsequent assignments. There is no contention that the Exchange National Company had notice other than through its director, Adams. Therefore, if the knowledge of Adams, the director, is not imputed to the corporation, the latter was without notice, is an innocent mortgagee, and it will be unnecessary in this suit to discuss the validity of the various assignments.

In Morgan, Baldwin & Co. v. Kanola Oil & Ref. Co., 102 Okla. 26, 226 P. 335, it was held:

"A principal is not chargeable with knowledge of his agent gained in the performance of acts not done on behalf of his principal but for and on his own personal behalf, and in matters where the agent's interest is adverse to that of his principal."

Under this rule the knowledge of Adams concerning the transactions whereby he obtained record title is not imputable to the Exchange National Company and subsequent assignees of the mortgage. Fred W. Steiner, trustee for Selma H. Lamb, is a holder in due course of the note and mortgage on plaintiff's land.

Adams and Reddin paid $2,520 at the guardianship sale. It is presumed this accrued to the benefit of the plaintiff. For all sums, including interest, which may be due or may become due in excess of $2,520 on this note and mortgage held by Fred W. Steiner, trustee for Selma H. Lamb, the latter will be required to look first to Robert E. Adams, Sara E. Adams, J. C. Reddin, and Lucile Reddin. If unable to satisfy said sums from the above-named parties the trustee may then proceed to subject the property of the plaintiff to the lien of the mortgage.

The judgment of the trial court is reversed and remanded, with directions to enter judgment finding plaintiff the sole and only heir of Lizzie Long, deceased, canceling the warranty deed

from John Brown to Robert E. Adams purporting to convey a one-half undivided interest in the tract of land involved, canceling all the proceedings of the guardian sale, including the confirmation thereof, and the guardian's deed to Robert E. Adams and J. C. Reddin; restoring possession of said property to plaintiff and quieting his title therein; adjudging the mortgage held by Fred W. Steiner, trustee for Selma Lamb, to be a valid lien upon plaintiff's land, to be enforced subject to and in accordance with the holding in the immediately preceding paragraph, and adjudging the costs of this action against Adams & Reddin, a partnership composed of Robert E. Adams and J. C. Reddin, and against Robert E. Adams and J. C. Reddin.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, CORN, GIBSON, HURST, and DAVISON, JJ., concur. DANNER, J., concurs in part and dissents in part.