### BROWN v. BOLEN et al.

No. 29269.   Oct. 14, 1941.

*119 P. 2d 88.*

Hal Welch, of Hugo, and Carloss Wadlington, of Ada, for plaintiff in error.

C. F. Green and J. W. Bolen, both of Ada, and Hamilton & Hamilton, of Holdenville, for defendants in error.

GIBSON, J. This is an action in equity to cancel certain mineral deeds executed by plaintiff and to quiet title to the premises described therein.

Plaintiff alleges that she is a full-blood Chickasaw; that the land in question is a portion of the allotment of her deceased father and came to her by devise under his will. It is charged that the above deeds are void for failure of approval by the county court as required by the Acts of Congress of May 27, 1908, and April 12, 1926 (35 Stat. 312; 44 Stat. 239).

There is no issue here concerning the fact of approval. The appeal rests upon the question whether the plaintiff was a full-blood Chickasaw. Defendants charge that she was not of the full blood, and therefore not affected by the acts above.

Plaintiff's name does not appear upon the final rolls of the citizens of the

Chickasaw Nation, for she was born after the rolls were closed, but her father and mother appear thereon as full bloods. She takes the position that since the rolls have been made conclusive evidence as to the quantum of Indian blood possessed by the enrolled citizens, the degree of blood of her father and mother as there shown fixes conclusively her own degree of blood.

This assertion is based upon the provisions of section 3 of the Act of Congress of May 27, 1908, as follows:

"That the rolls of citizenship and of freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said Tribes and of no other persons to determine questions arising under this act and the enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman."

Defendants say that section 3 plainly excludes the plaintiff from the operation thereof, since her name does not appear on the rolls, and that the section is clear and unambiguous in this respect and is therefore not subject to judicial construction other than to apply it according to its own provisions.

The primary question here concerns the weight to be given the rolls as a matter of evidence.

Plaintiff takes the position that the degree of Indian blood of unenrolled heirs of parents whose names appear on the rolls is to be governed conclusively by the blood of such parents as the quantum thereof is designated on said rolls.

This interpretation would extend the section too far. It does not purport to fix the rules of evidence as to anyone except those whose names appear on the rolls. It may be safely said that in any matter pertaining to the allotment of an enrolled citizen the rolls of his tribe will be and remain conclusive evidence of the allottee's quantum of Indian blood. For example, the allotment in the instant case must be considered in the hands of the heirs as that of a deceased full-blood citizen. As such it is of that class wherein the conveyances of heirs must be approved by the county court, if the heirs are full-blood Indians. Act April 12, 1926.

But section 3, supra, does not purport to say that the blood of the heir shall be controlled by the blood of the parent as the same appears upon the rolls. Said section is a restriction upon or is in derogation of the common-law rules of practice and procedure. The operation thereof should be restricted to the class of persons therein specifically named and should exclude the persons therein specifically excluded. Those members of the Five Civilized Tribes whose names do not appear on the rolls of citizenship are in no manner affected by the arbitrary rule of evidence as provided in the act. If the rolls are to be used at all in establishing the degree of Indian blood of an unenrolled citizen, the introduction thereof in evidence falls within another rule. This court has heretofore said that the rolls are prima facie evidence of the blood of an enrolled citizen where marriage was attacked on the ground that one of the parties was of African descent. Long v. Brown, 186 Okla. 407, 98 P. 2d 28.

It cannot be said with any degree of certainty that Congress intended by section 3 to establish once and for all time the degree of Indian blood of all present and future citizens of the Five Civilized Tribes in matters pertaining to their tribal lands. It can hardly be said that Congress intended to extend to those not on the rolls an arbitrary rule of genetical relationship in disregard of natural laws. In fact, such parties are specifically excluded from the operation of the act. So it follows that where the degree of Indian blood of one not on the rolls becomes material, the rolls are to be treated exactly as if section 3 had never been enacted.

In such case, so far as the quantum of Indian blood of an ancestor is con-

cerned, the rolls represent only the final conclusion of the officers who prepared them, and as evidence on that issue they are worth no more than the evidence or information upon which that conclusion was based. It follows that the final rolls must take their place as merely a part of the enrollment records in cases of this character. They are entitled to no more weight than the remainder of those records in establishing the quantum of Indian blood of a citizen not appearing thereon.

Defendants attempted to show that plaintiff's mother, though enrolled as a full blood, was part white. They concede that the rolls constituted prima facie evidence of the blood of the parents, and, therefore, the blood of the plaintiff. In view of our prior decisions, defendants are apparently correct. Long v. Brown, supra; Yaholar v. Autry, 156 Okla. 257, 10 P. 2d 676. In the latter case we held as follows:

"The enrollment record made by the Commission to the Five Civilized Tribes of Indians, under section 21, Act of Congress of June 28, 1898 (30 Stat. 502), is, as to that part thereof which is descriptive of the persons so enrolled, prima facie evidence as to the matters therein shown, such as parentage, etc., and if the persons so shown thereon to be parents of the allottee are contended not to have been such parents, the burden is on the party asserting the incorrectness of such enrollment record, and the same cannot be overthrown except by clear, cogent, and convincing proof."

The degree of Indian blood of the citizen constituted not only an important, but a necessary, element in describing him. The burden was on defendants to show the incorrectness of the enrollment record in this regard.

An examination of the record shows that the defendants produced clear, cogent, and convincing proof of the incorrectness of the rolls as to the quantum of Indian blood of plaintiff's mother. The mother's name was Agnes Hayes. On her own census card she gave her father's name as Martin Melville.

The census card of this same Martin Melville shows him to be an intermarried white citizen. Samuel C. Melville, as son of Martin Melville, testified that he and Agnes Hayes were raised by his father and mother, and that he had always considered Agnes Hayes as his full sister; that she was light complected, with brown hair.

Plaintiff admitted that she had testified in county court in the proceedings for approval of her deeds that the said Samuel C. Melville and her mother, Agnes Hayes, had the same mother and father. There appears to be no contradiction of the evidence introduced by defendants. There is convincing proof that the final rolls were incorrect as to the degree of Indian blood possessed by Agnes Hayes, the mother. She was at most a half-blood Indian.

This action is one of equitable cognizance. The judgment of the trial court is not against the clear weight of the evidence, and is therefore affirmed.

RILEY, BAYLESS, HURST, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., and OSBORN, J., dissent. CORN, V. C. J., absent.