NORRIS v. JOHNSON et al.

No. 34068.    Sept. 18, 1951.

*235 P. 2d 926.*

Busby, Harrell & Trice, Ada, for plaintiffs in error.

King & Wadlington, Ada, for defendants in error.

O'NEAL, J.   This is an appeal from a decree of the district court of Pontotoc county quieting the title to certain lands located in Pontotoc county allotted to Arthur Johnson, deceased, a fullblood Chickasaw Indian, roll No. 389; canceling a resale tax deed covering 60 acres of the allotted lands, denying the holder of the resale tax deed reimbursement for the taxes paid on said land, apportioning the rents and profits, and decree for partition of all of said lands.

The record shows that the lands here involved were allotted to Arthur Johnson, a fullblood Chickasaw Indian, in two tracts:  one being his homestead allotment, the other being his surplus allotment, together containing 220 acres, the same being described as follows:

"The West Half of the East Half of the Northeast Quarter and the East Half of the West Half of the Northeast Quarter and the Northeast Quarter of the Southeast Quarter of the Northeast Quarter and the East Half of the Southwest Quarter of the Southeast Quarter of Section Ten (10), Township One (1) North, Range Five (5) East, (Chickasaw Nation), of the Indian Base and Meridian in Indian Territory." (Homestead Patent)

"The Southwest Quarter of the Northeast Quarter and the East Half of the Southeast Quarter of the Northwest Quarter and the Northwest Quarter of the Southeast Quarter and the Northeast Quarter of the Southwest Quarter of the Southeast Quarter of Section Three (3) Township One (1) North, and Range Five (5) East, (Chickasaw Nation), of the Indian Base and Meridian, in Indian Territory." (Allotment Patent)

Arthur Johnson died on or about October 15, 1927, seized and possessed of the full title to said lands. A determination of heirship of Arthur Johnson was duly made and the interest of each heir determined as follows:

| "Name | Relationship | Interest |
|---|---|---|
| Salina Johnson nee Harjo | Widow | 1/3 |
| Corine, also known as Cora Culberson nee Johnson | Daughter | 1/6 |
| Roy Johnson | Son | 1/6 |
| Lela Johnson | Daughter | 1/6 |
| May Johnson | Daughter | 1/6" |

Thereafter Salina Johnson conveyed her one-third interest in said lands to P. A. Norris and Charles T. Bates, and Bates later conveyed all of his interest therein to P. A. Norris. The record further shows that the interest of P. A. Norris in and to said lands, by mesne conveyances, became vested in the following persons: Josephine Norris, executrix of the last will and testament of Tom R. Norris, deceased; the First National Bank of Ada, executor of the last will and testament of Frank C. Norris, deceased; John C. Norris; Philip A. Norris; Marjorie Norris Peterson, and Susan Norris Davison. On or about December 3, 1943, Salina Johnson, nee Harjo, died intestate. A determination of the heirship of Salina Johnson and the interest of each of her heirs in her estate was had in proper court, as follows:

| "Names | Relationship | Interest |
|---|---|---|
| Roy Johnson | Son | 1/4 |
| Corine Culberson nee Johnson | Daughter | 1/4 |
| May Johnson | Daughter | 1/4 |
| Lela Johnson | Daughter | 1/4" |

On or about the . . . day of April, 1948, May Johnson died intestate, seized and possessed of a one-sixth interest in the lands here involved, part of the allotment of Arthur Johnson, described as follows:

"West Half of the Northeast Quarter of Northeast Quarter and East Half of Northwest Quarter of Northeast Quarter and East Half of Southwest Quarter of Northeast Quarter of Section 10, Township 1 North, Range 5 East, containing 60 acres, Pontotoc County, Oklahoma."

There had been no determination of the heirship of said May Johnson. The trial court in this action made its determination of heirship of the said May Johnson and the interest of each of said heirs in said land as follows:

| "Names | Relationship | Interest |
|---|---|---|
| Johnny Wayne Johnson | Son | 1/12 |
| Hazel Sue Johnson | Daughter | 1/12" |

Soon after he acquired the one-third interest in all the lands here involved in 1931, P. A. Norris entered into the possession thereof and caused said land to be cultivated and placed valuable and lasting improvements thereon, and occupied said premises peaceably and adversely to all other persons except Roy Johnson, Corine Culberson, nee Johnson, Lela Johnson, Johnny Wayne Johnson, a minor, and Hazel Sue Johnson, a minor, his tenants in common. P. A. Norris thereafter conveyed his interest in said land so that the same, by mesne conveyances, became vested as above set out.

The trial court found and held that a two-thirds interest in the 60 acres of land descended, upon the death of Arthur Johnson, to and became vested in his children Roy Johnson, Corine Culberson, nee Johnson, Lela Johnson and May Johnson. The trial court further found and held that Salina Johnson was a fullblood Indian and that the children of Arthur Johnson and Salina Johnson were fullblood Indians and are each entitled to have 160 acres tax-exempt

land under the provisions of applicable Acts of Congress. (Act Cong. May 10, 1928, 45 Stat. 495, as amended by Act May 24, 1928, 45 Stat. 733.) It was stipulated at the trial that Arthur Johnson was a fullblood Chickasaw Indian. The trial court further found that none of the children of Arthur Johnson, above named, received an allotment of lands as a member of the Chickasaw Tribe of Indians; that each of said children has inherited interests in the allotted lands of their parents, and that such interest of each does not amount to 160 acres of land, and that by reason of the Acts of Congress said lands so inherited by the children of Arthur Johnson and Salina Johnson descended to them free from taxation, and is therefore not taxable by the State of Oklahoma, or its subdivisions.

The trial court further found and held that the two-thirds interest of the said Roy Johnson, Corine Culberson, nee Johnson, Lela Johnson and May Johnson in and to the lands described above (60 acres) was attempted to be sold at tax resale by the county treasurer of Pontotoc county on May 15, 1940; that pursuant to said tax resale the county treasurer issued his resale tax deed to P. A. Norris, which deed was filed for record and recorded in the office of the county clerk of Pontotoc county; that the sale of said land for taxes and the resale tax deed issued in pursuance thereof were and are void and of no force and effect for the reason that the two-thirds interest in said lands was exempt from taxation under the Acts of Congress, and that said resale tax deed constitutes a cloud upon the title of said lands and should be vacated, set aside and held for naught.

The trial court further found that said P. A. Norris paid out for said tax deed and for subsequent taxes upon said two-thirds interest in said 60 acres of land, the sum of $129.98, for which the plaintiffs, and the First National Bank of Ada, as executor of the will of Frank C. Norris, deceased, John C. Norris, Philip A. Norris, Marjorie Norris Peterson and Susan Norris Davison claim reimbursement from defendants Roy Johnson, Corine Culberson, nee Johnson, Lela Johnson, Johnny Wayne Johnson, a minor, and Hazel Sue Johnson, a minor, and claim that they are entitled to a credit therefor upon the rents and profits found due said defendants for their share of the rental value of said land.

The trial court further found that after P. A. Norris went into possession of the land described in said resale tax deed, he and his successors in title have collected rentals from said 60 acres of land for the years 1940 to 1948, inclusive, in the total sum of $330 which was the reasonable rental value thereof, and that said plaintiff and the defendants claiming title under P. A. Norris are indebted to Roy Johnson, Corine Culberson, nee Johnson, Lela Johnson, Johnny Wayne Johnson, a minor, and Hazel Sue Johnson, a minor for the two-thirds part of the rentals so collected, or $220, less a credit of $93.43 to be returned for the unexpired term of an agricultural lease running for a period of five years, which was voluntarily surrendered and canceled, leaving a net sum due Roy Johnson, and his associate defendants, of $126.57. The court further found and held that it is impracticable for the owners of the land involved to attempt to own and control their said lands as tenants in common, and that it is to the best interest of the owners of said real estate that all of said lands be partitioned in the manner provided by law.

Commissioners were appointed to make partition in kind, or in the event they should find that partition in kind cannot be had without manifest injustice to the parties, the commissioners were ordered to view and appraise the land and make their return in the form and manner provided by law.

The court further ordered that in case it be found that the lands could not be partitioned in kind without manifest injustice to the parties, and that

the land should be sold in said partition proceedings, that out of the proceeds thereof going to plaintiff and the other defendants claiming under P. A. Norris, the sum of $126.57 due Roy Johnson and his associate defendants for the rentals due them should be withheld and paid to said Roy Johnson and his associate defendants.

Defendant Roy Johnson, and his associate defendants, excepted to that part of the decree which directed partition, but do not appeal. Plaintiff Josephine Norris, as executrix of the will of Tom R. Norris, and the First National Bank of Ada, as the executor of the will of Frank C. Norris, and the other defendants claiming under P. A. Norris excepted to that part of the decree which declared the resale tax deed invalid and to that part of the decree which renders judgment against them for the sum of $126.57. Plaintiff Josephine Norris, executrix of the last will and testament of Tom R. Norris, the First National Bank of Ada, as executor of the last will of Frank C. Norris, and the other defendants claiming under P. A. Norris, after unsuccessful motion for new trial, appeal.

There are six assignments of alleged error.

(1) That the trial court erred in overruling motion of plaintiffs in error for a new trial.

(2) Said court erred in admitting evidence offered by the defendants in error over the objections and exceptions of the plaintiffs in error.

(3) The court erred in adjudging and determining that the interest of the defendants in error in and to the lands involved in said action described as follows, to wit:

"West Half of the Northeast Quarter of Northeast Quarter, and East Half of Northwest Quarter of Northeast Quarter, and East Half of Southwest Quarter of Northeast Quarter of Section 10, Township 1 North, Range 5 East."

was at all times free from taxation in the hands of said defendants.

(4) Said court erred in refusing and denying to the plaintiffs in error reimbursement in the sum of $129.98, being the amount paid by plaintiffs in error and their predecessor, P. A. Norris, to the county treasurer of Pontotoc county, Oklahoma, for taxes and for a resale tax deed upon the lands above described covering the interests of the defendants in error therein.

(5) Said court erred in rendering judgment for the defendants in error insofar as the same denied to plaintiffs in error reimbursement in the sum of $129.98.

(6) Said court erred in directing the distribution of the proceeds of the partition sale to the parties insofar as said distribution refused and denied to the plaintiffs in error reimbursement for the said sum of $129.98 as for taxes paid by plaintiffs in error and their predecessor in title.

Said assignments of error are presented under three propositions.

The first proposition is that the trial court erred in admitting evidence of the quantum of Indian blood of Salina Johnson, nee Harjo, in contravention of the enrollment record. In order to prove that the 60 acres of land in question, covered by the resale tax deed, was nontaxable, it was encumbent upon defendants in error, Roy Johnson and his associate defendants, to prove that they and each of them were unenrolled fullblood Indians, and that each of them inherited and owned less than 160 acres of land. In order to make such proof as to the quantum of Indian blood, it was necessary that they prove that the father and mother of Roy, Corine, Lela, and May (deceased), were both fullblood Indians. It having been stipulated, as above shown, that Arthur Johnson was a fullblood Chickasaw Indian, it was the contention of defendants in error that Salina Johnson, nee Harjo, was a fullblood Indian, notwithstanding the fact she was enrolled as a half-blood. They sought to prove same by showing that Salina Johnson, nee

Harjo, was a one-half blood Chickasaw Indian, but that she was also a half-blood Seminole Indian. In this connection Lela Johnson was permitted to testify, over the objection of plaintiffs in error as follows:

"By Mr. Wadlington: Q. State your name? Your name is Lela Johnson? A. Yes, sir.

"Q. Your mother was Salina Harjo, is that right? A. Yes, sir.

"Q. And she married Arthur Johnson? A. Yes, sir.

"Q. Your mother, according to the Rolls was enrolled on the Chickasaw Rolls as a one-half blood? A. Yes, sir.

"Q. But her mother was Tennessee Alexander and was a fullblood Chickasaw Indian according to the rolls? A. Yes, sir.

"Q. And her father was Narcochee, a fullblood Seminole Indian? A. Yes, sir.

"Q. Then, your mother was actually a fullblood Indian instead of being a one-half blood, according to the Rolls, is that right?

"By Mr. Trice: To which the Plaintiff objects for the reason that it is incompetent, irrelevant and immaterial and for the further reason that the Act of 1947 provides that the Final Rolls are conclusive, and we object to it on the further grounds that under the preceding Acts of Congress and the Act of 1947, the Rolls are conclusive as to all persons claiming under Salina Johnson, either as heirs òr grantors, devisees or grantees.

"By the Court: That objection will be overruled. By Mr. Trice: Note our exception. A. Yes, sir.

"Q. How old are you now, Lela? A. Twenty-one."

The Act of Congress of May 27, 1908, 35 Stat. 312, §3, provided:

"That the rolls of citizenship and of freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes and of no other persons to determine questions arising under this act and under the enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman."

Under that provision it was held that evidence was not admissible to show the quantum of blood of an enrollee different from that appearing on the enrollment record. Hynds v. Walker, 149 Okla. 195, 299 P. 905.

In Brown v. Bolen, 189 Okla. 483, 119 P. 2d 88, it was held that said section 3, 35 Stat. 312, applied only to citizens whose names appear on said rolls and did not purport to make the degree of Indian blood of an unenrolled Indian conclusively dependent on the degree of Indian blood of his parents, as the same appears on the rolls. Under the rule there stated, the testimony of Lela Johnson, above quoted, was competent, except for the provisions of an Act of Congress of August 4, 1947. Section 2 of that act provides:

"Sec. 2, In determining the quantum of Indian blood of any Indian heir or devisee, the final rolls of the Five Civilized Tribes as to such heir or devisee, if enrolled, shall be conclusive of his or her quantum of Indian blood. If unenrolled, his or her degree of Indian blood shall be computed from the nearest enrolled paternal and maternal lineal ancestors of Indian blood enrolled on the final rolls of the Five Civilized Tribes."

The heirs of Salina Johnson, nee Harjo, and Arthur Johnson, wife and husband, being unenrolled Indians, are governed by the provisions of section 2 above quoted. They fall squarely within the terms of said section. They are unenrolled Indians; both their parents are enrolled on the Chickasaw Rolls, their father as a full blood, their mother as a half blood; their parents are their nearest enrolled ancestors on the final rolls of the Five Civilized Tribes. That makes them three-quarter blood Indians

and section 2, supra, precludes them from proving quantum of Indian blood different from that established by the Chickasaw Rolls.

Therefore, it is clear that under said section 2 the evidence of the witness Lela Johnson was incompetent. There was no competent evidence to prove the quantum of Indian blood of the unenrolled heirs of Salina Johnson, nee Harjo, and Arthur Johnson to be different than that established by the Chickasaw Rolls. Consequently, the evidence fails to show that the sixty (60) acres involved in the resale tax deed was nontaxable. But, to the contrary, since under said section 2 said heirs, as to the quantum of Indian blood, are governed by the Chickasaw Rolls, they are not fullblood, but three-fourths blood Indians, which renders the sixty (60) acres involved in the resale tax deed taxable.

Defendants in error in their pleading assail the validity of said tax deed on the ground that the land was sold for more than the total amount of taxes, interest, penalties and costs due thereon, in that the land was sold at the 1940 resale and that all the taxes for the year 1939 were included, although the last quarter thereof was not delinquent at the time the first notice of sale was published. If that be true, the resale tax deed is void under a number of decisions of this court. Lind v. McKinley, 196 Okla. 4, 161 P. 2d 1016; House v. Mainka, 196 Okla. 174, 13 P. 2d 225. The record shows that during the trial it was stipulated as follows:

"By Mr. Wadlington: Will it be stipulated that the resale deed is invalid because the resale deed on the sixty acres is invalid because— By Mr. Trice: Because it included the last quarter of the taxes of the year that were not delinquent? By Mr. Wadlington: Yes. By Mr. Trice: Yes, that is correct, the last quarter of the taxes was erroneously included in the resale under the authority of House v. Mainka, and it could only amount to the payment of taxes on the land."

Under the pleading and that stipulation, the resale tax deed is void, and it would not be necessary to determine whether or not the land was taxable, except for the question of reimbursement for taxes. If the land was nontaxable, there was and could be no taxes, interest, penalties and costs due thereon which defendants in error would be required to pay in order to have the deed canceled. Plaintiffs in error could then look to the county for reimbursement for taxes under 68 O. S. 1941 §390. If the land was taxable, the defendants in error would be required to reimburse plaintiffs in error for the taxes paid.

For the error pointed out the judgment and decree of the trial court is reversed, with instructions to proceed in accordance with the views herein expressed.

WELCH, CORN, GIBSON, JOHNSON, and BINGAMAN, JJ., concur.